**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. SUSAN NEDZA, M.D., | ) ) ) | |
| Plaintiff/Relator, | ) ) | Case No. 15-cv-06937 |
| v. | ) ) | Judge Jorge L. Alonso |
| AMERICAN IMAGING MANAGEMENT, INC. et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT HEALTH FIRST HEALTH PLANS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

THE COMPLAINT'S ALLEGATIONS ........................................................................ 1

STANDARD OF REVIEW ........................................................................................ 2

ARGUMENT ............................................................................................................ 4

I.   The FAC Fails to Plead with Sufficient Particularity Under Rule 9(b) .................... 4

    A.   The FAC Does Not Satisfy Rule 9(b) Because Its Allegations Are Made Against
Defendants En Masse and Do Not Describe Any Specific Conduct by Health First. ........ 5

        1.   The Overwhelming Majority of Allegations Are Inappropriately Pled En Masse. ...... 5

        2.   The FAC Contains Only Two Allegations Concerning Health First, and Neither
Describes Any Conduct, Let Alone Fraudulent Conduct. ........................................... 7

    B.   The FAC Fails Under Rule 9(b) Because It Contains No Allegations Connecting the
Alleged Scheme to Submission of Any Claims or Statements by Health First. ................ 8

    C.   The FAC Fails Under Rule 9(b) Because It Fails to Allege Falsity with Particularity ...... 8

        1.   Relator Has Not Alleged with Particularity Any Express Certification ...................... 9

        2.   Relator Has Not Alleged with Particularity Any Violation of Any Law or Regulation
and Therefore Has Not Alleged with Particularity Any Implied Certification........... 10

    D.   The FAC Fails to Allege Materiality with Particularity. .................................. 11

II.  The FAC Does Not Satisfy Rule 8 ........................................................................ 11

III. As a Matter of Law, the FAC's Allegations Against Health First Are Not Actionable Falsity
and Are Not Material to Payment, So Must Be Dismissed Under Rule 12(b)(6).................. 12

    A.   The Allegations in the FAC Are Not Actionable Express Certification........................... 12

    B.   The Allegations in the FAC Are Not Actionable Implied Certification .......................... 12

    C.   None of the Allegations in the FAC Could Have Been Material .................................... 13

IV.  The FAC Must Be Dismissed Under the FCA's Public Disclosure Bar............................... 13

V.   The Court Should Dismiss the FAC with Prejudice .............................................. 15

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)..........................................................................................................2, 4

*Bank of Am., N.A., v. Knight*
    725 F.3d 815 (7th Cir. 2013) ...........................................................................................8

*Bellevue v. Universal Health Servs. of Hartgrove, Inc.*
    867 F.3d 712 (7th Cir. 2017) .........................................................................................15

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)..........................................................................................................8

*Cause of Action v. Chicago Transit Auth.*
    815 F.3d 267 (7th Cir. 2016) .........................................................................................14

*City of Chicago v. Purdue Pharma L.P.*
    No. 14-cv-4361, 2016 WL 5477522 (N.D. Ill. Sept. 29, 2016)..............................11

*Coyne v. Amgen*
    No. 17-1522 (2d Cir. Dec. 12, 2017) .............................................................................11

*Foman v. Davis*
    371 U.S. 178 (1962)........................................................................................................15

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*
    128 F.3d 1074 (7th Cir. 1997) .........................................................................................2

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*
    935 F.2d 815 (7th Cir. 1991) .........................................................................................15

*Lengerich v. Columbia Coll.*
    633 F. Supp. 2d (N.D. Ill. 2009) .....................................................................................7

*Stop Ill. Health Care Fraud, LLC v. Sayeed*
    No. 12-cv-9306, 2016 WL 4479542 (N.D. Ill. Aug. 25, 2016) ..................................6

*Suburban Buick, Inc. v. Gargo*
    No. 08-cv-0370, 2009 WL 1543709 (N.D. Ill. 2009)....................................................3

*Thulin v. Shopko Stores Operating Co.*
    771 F.3d 994 (7th Cir. 2014) ...........................................................................................3

*U.S. ex rel. Berkowitz v. Automation Aids*
    No. 13 C 08185, 2017 WL 1036575 (N.D. Ill. Mar. 16, 2017) ...............................12

*U.S. ex rel. Camillo v. Ancilla Sys., Inc.*
No. 03-cv-0024 DRH, 2005 WL 1669833 (S.D. Ill. July 18, 2005)..........................................5

*U.S. ex rel. Cieszyski v. Lifewatch Servs., Inc.*
No. 13-cv-4052, 2015 WL 6153937 (N.D. Ill. Oct. 19, 2015) ..................................................9

*U.S. ex rel. Dolan v. Long Grove Manor, Inc.*
No. 10 C 368, 2014 WL 3583980 (N.D. Ill. July 18, 2014) ....................................................11

*U.S. ex rel. Fowler v. Caremark RX, L.L.C.*
496 F.3d 730 (7th Cir. 2007), *overruled on other grounds by*
*Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009) ..................................3

*U.S. ex rel. Frawley v. McMahon*
No. 11-cv-4620, 2016 WL 5404598 (N.D. Ill. Sept. 28, 2016)................................................14

*U.S. ex. rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*
772 F.3d 1102 (7th Cir. 2014) ...........................................................................................3, 11

*U.S. ex rel. Gross v. Aids Research Alliance-Chi.*
415 F.3d 601 (7th Cir. 2005) ....................................................................................................2

*U.S. ex rel. Keen v. Teva Pharm. USA Inc.*
No. 15-cv-2309, 2017 WL 36447 (N.D. Ill. Jan. 4, 2017)..........................................3, 4, 8, 15

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*
41 F. Supp. 3d 323 (S.D.N.Y. 2014)......................................................................................8, 9

*U.S. ex rel. Lisitza v. Par Pharm. Cos.*
No. 06 C 6131, 2013 WL 870623 (N.D. Ill. Mar. 7, 2013) .......................................................6

*U.S. ex rel. Lisitza et al. v. Par Pharm. Cos.*
No. 06-cv-06131, 2017 WL 3531678 (N.D. Ill. Aug. 17, 2017) .............................................13

*U.S. ex rel. Marquis v. Northrop Grumman Corp.*
No. 09 C 7704, 2013 WL 951095 (N.D. Ill. Mar. 12, 2013) .....................................................8

*U.S. ex rel. McCarthy v. Marathon Techs., Inc.*
No. 11-cv-7071, 2014 WL 4924445 (N.D. Ill. Sept. 30, 2014)................................................4

*U.S. ex rel. O'Donnell v. Am. at Home Healthcare & Nursing Servs., Inc.*
No. 14-cv-1098, 2017 WL 2653070 (N.D. Ill. June 20, 2017)..................................5, 7, 13, 14

*U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*
836 F.3d 770 (7th Cir. 2016) .............................................................................................3, 11

*U.S. ex rel. Radke v. Sinha Clinic Corp.*
No. 12-cv-6238, 2015 WL 4656693 (N.D. Ill. Aug. 5, 2015) ...............................................2, 5

*U.S. ex rel. Rockey v. Ear Inst. of Chicago, LLC*
   92 F. Supp. 3d 804 (N.D. Ill. 2015) .......................................................................4, 12

*U.S. ex rel. Shmushkovich v. Home Bound Healthcare, Inc.*
   No. 12-cv-2924, 2015 WL 7251934 (N.D. Ill. Nov. 17, 2015) ...............................11

*U.S. ex rel. Turner v. Michaelis Jackson & Assocs., LLC*
   No. 03-cv-4219-JPG, 2011 WL 13510 (S.D. Ill. Jan. 4, 2011) ...............................10

*U.S. ex rel. Young v. Suburban Home Physicians*
   No. 14-cv-02793, 2017 WL 2080350 (N.D. Ill. May 15, 2017)................................5

*U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd. Inc.*
   806 F.3d 946 (7th Cir. 2015) .............................................................................14, 15

*United Health Servs., Inc. v. United States ex rel. Escobar*
   136 S. Ct. 1989 (2016) ...........................................................3, 4, 11, 12, 13, 14

*Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp..*
   192 F. Supp. 2d 852 (N.D. Ill. 2002) ........................................................................7

Statutes, Regulations, and Rules

False Claims Act, 31 U.S.C. §§ 3729 *et seq.*:

   § 3729(a)(1)(A) ........................................................................................................3

   § 3729(a)(1)(B) ........................................................................................................3

   § 3730(e)(4)(A) ......................................................................................................13

   § 3730(e)(4)(B) ......................................................................................................14

42 U.S.C. § 1395w-27 ........................................................................................10, 13

42 C.F.R. § 422.101 ...........................................................................................10, 13

42 C.F.R. § 422.504(a)..................................................................................10, 11, 13

Fed. R. Civ. P. :

Rule 8 ....................................................................................................4, 11, 12

Rule 8(a)(2) ..........................................................................................................2

Rule 9(b) ................................................................................2, 3, 4, 5, 6, 9

Rule 12(b)(6).................................................................................................2, 12

Fed. R. Evid. :

Rule 201 ..................................................................................................................................7

Relator's First Amended Complaint ("FAC") accuses her former employer, American Imaging Management, Inc. ("AIM"), and over two dozen insurance plans (the "Defendant Insurance Plans"), including Health First Health Plans, Inc. ("Health First"), of defrauding the Government, in violation of the Federal civil False Claims Act ("FCA").[1] The forty-seven (47) page FAC describes AIM's alleged misconduct, but includes only two specific allegations concerning Health First: (1) that Defendant Anthem, Inc. ("Anthem") is Health First's parent company, and (2) that AIM made a temporary change to the services it provided to Health First during a four month period in 2014. The first of these allegations is demonstrably false and neither allegation, together or separately, provides any plausible factual basis for Relator's accusation that Health First defrauded the Government – let alone, with the particularity required by Rule 9(b).[2] Put simply, the FAC fails to state with particularity any information about any claim submitted by Health First to the Government, or how Health First's conduct resulted in any fraudulent misrepresentation to the Government, or what Health First did that would have been material to the Government's decisions to pay Health First's claims. Thus, the FAC fails to state a plausible FCA violation and, at least as to Health First, should be dismissed, *with prejudice*.[3]

## THE COMPLAINT'S ALLEGATIONS

The FAC tells a story about a company, AIM, that sells pre-authorization services to health insurance companies. Pre-authorization is a utilization management technique used by many private insurance companies to determine whether a particular medical service is medically necessary and appropriate for a patient before the insurance company decides to pay for that

---

[1] The Government has declined to intervene in the matter.

[2] On February 8, Relator's counsel informed Health First that she intended to amend her complaint to clarify that Health First is not an Anthem entity. Shortly before this filing, Relator's counsel filed a motion to this effect.

[3] Health First is filing this brief in compliance with its Court-ordered deadline, but understands that other Defendants have requested and been granted additional time and will therefore be filing briefs later. To the extent applicable, Health First may seek the Court's leave to join in the arguments that other Defendants may raise.

service.  The FAC alleges that the Defendant Insurance Plans contracted with AIM to process pre-authorization requests for plan enrollees, *see* FAC ¶ 6, and that AIM's process was deficient in ways impacting patients' receipt of certain diagnostic services.

The FAC also alleges that each of the Defendant Insurance Plans contracted with the Government under the Medicare Advantage ("MA") program.  *See* FAC ¶ 4.  Medicare beneficiaries may choose to enroll in private MA plans instead of "traditional" Medicare, wherein the Government itself acts as the insurer.  Under the MA program, the Government pays to each MA plan a 'capitated' amount, *i.e.*, a fixed dollar amount for each Medicare beneficiary enrolled in that plan, based on that patient's demographic information and medical diagnoses.  The MA plan is then responsible for paying for the health care services provided to that enrollee, regardless of the capitated amount it receives, and for managing those costs.  The FAC suggests that the Defendant Insurance Plans engaged AIM, knowing that AIM would deploy a deficient process to the detriment of MA beneficiaries.

Absent from this story, though, is any detail about Health First's involvement.

### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted."  *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  To avoid dismissal, a complaint must provide a "short and plain statement of the claim", Fed. R. Civ. P. 8(a)(2), containing "sufficient factual matter" to be "plausible on its face", *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, "FCA claims are subject to the heightened pleading requirements of Rule 9(b)", which requires a complaint alleging fraud to "state with particularity the circumstances constituting fraud or mistake."  Fed R. Civ. P. 9(b); *U.S. ex rel. Radke v. Sinha Clinic Corp.*, No. 12-cv-6238, 2015 WL 4656693, at *2 (N.D. Ill. Aug. 5, 2015) (*citing U.S. ex rel. Gross v. Aids*

*Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005)); *see also U.S. ex rel. Keen v. Teva Pharm. USA Inc.*, No. 15-cv-2309, 2017 WL 36447, at *2 (N.D. Ill. Jan. 4, 2017) (Alonso, J.) (citing *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016)).  The Seventh Circuit demands that when, as here, Rule 9(b) applies, "a plaintiff ordinarily must describe the who, what, when, where, and how of the fraud – the first paragraph of any newspaper story."  *Presser*, 836 F.3d at 776 (internal citations and quotations omitted).  Under Rule 9(b), a complaint "should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant."  *Suburban Buick, Inc. v. Gargo*, No. 08-cv-0370, 2009 WL 1543709, at *4 (N.D. Ill. May 29, 2009).

To adequately allege that Health First violated 31 U.S.C. § 3729(a)(1)(A), Relator must specify (1) a false claim; (2) presented by Health First to the United States for payment or approval; (3) with knowledge that the claim was false.  *U.S. ex rel. Fowler v. Caremark RX, L.L.C.,* 496 F.3d 730, 741 (7th Cir. 2007).  To adequately allege that Health First violated 31 U.S.C. § 3729(a)(1)(B), Relator must specify that (1) Health First made a statement material to a false claim; (2) the statement was false; and (3) Health First knew the statement was false.  *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 998 (7th Cir. 2014).  The misrepresentation must also be material.  *See United Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016).

To satisfy Rule 9(b), an FCA complaint "must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [Government]."  *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (internal citations and

quotations omitted). As this Court has recently explained, because "[t]he submission of a false claim is…the *sine qua non* of a False Claims Act violation…a relator must allege the submission of false claims specifically and with particularity under Rule 9(b)." *Teva Pharm. USA Inc.*, 2017 WL 36447, at *3 (Alonso, J.) (internal citations and quotations omitted). An FCA complaint must also "plead[] facts to support allegations of materiality" with particularity. *Escobar*, 136 S. Ct. at 2004 n.6. An FCA complaint's "allegation of knowledge is subject to the federal pleading standard as stated in *Ashcroft*…and…*Twombly*." *U.S. ex rel. Rockey v. Ear Inst. of Chicago, LLC*, 92 F. Supp. 3d 804, 818 (N.D. Ill. 2015). The allegations in a complaint must describe conduct that could plausibly raise an actionable claim. *Ashcroft*, 556 U.S. at 678.

## ARGUMENT

Virtually devoid of allegations against Health First, the FAC fails every standard. It fails to plead with particularity as required by Rule 9(b), or even sufficiently to satisfy Rule 8, it fails to allege any actionable violation of law, and it is barred as publicly disclosed.

## I. The FAC Fails to Plead with Sufficient Particularity Under Rule 9(b).

As to Health First, the FAC provides none of the detail required by Rule 9(b). The FAC mentions Health First only twice and offers no information about who at Health First made what representation, when or where it occurred, or how it was communicated. Fatally, the FAC offers no specific information as to any claim submitted by Health First, let alone "the manner in which the claims were false." *U.S. ex rel. McCarthy v. Marathon Techs., Inc.*, No. 11-cv-7071, 2014 WL 4924445, at *4 (N.D. Ill. Sept. 30, 2014). The FAC also fails to sufficiently allege that the alleged conduct would have been material to a decision to pay Health First's claims. [4]

---

[4] Likewise, the FAC fails to specify claims submitted by Defendant Insurance Plans, or to plead materiality of Defendant Insurance Plans' conduct. Therefore, although allegations made *en masse* against Defendant Insurance Plans are not appropriately pled against Health First at all, the FAC fails even considering these allegations.

In light of these extreme deficiencies, allowing the FAC to move forward as to Health First would violate Rule 9(b)'s foundational purposes, *i.e.*, allow Relator to tarnish Health First's reputation without any basis, enable a groundless fishing expedition into Health First's affairs, and provide Health First with no notice at all of the alleged fraudulent conduct in which Relator believes it engaged. *See U.S. ex rel. O'Donnell v. Am. at Home Healthcare & Nursing Servs., Inc.*, No. 14-cv-1098, 2017 WL 2653070, at *5 (N.D. Ill. June 20, 2017).

## A. The FAC Does Not Satisfy Rule 9(b) Because Its Allegations Are Made Against Defendants *En Masse* and Do Not Describe Any Specific Conduct by Health First.

*1. The Overwhelming Majority of Allegations Are Inappropriately Pled En Masse.*

To satisfy Rule 9(b), a complaint must provide "specificity with respect to who did what when." *Radke*, 2015 WL 4656693, at *3. "The importance of providing fair notice means that a plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme….To that end, Rule 9(b) is of especial importance in a case involving multiple defendants. Where there are allegations of a fraudulent scheme with more than one defendant, the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Am. at Home Healthcare & Nursing Servs.*, 2017 WL 2653070, at *5 (internal citations and quotations omitted). FACs that "are devoid of differentiation in the conduct of [certain] defendants…instead referring to defendants collectively as 'the defendants'… without providing representative examples of the conduct of each" must be dismissed as to those defendants. *Radke*, 2015 WL 4656693, at *3; *see also U.S. ex rel. Young v. Suburban Home Physicians*, No. 14-cv-02793, 2017 WL 2080350, at *6 (N.D. Ill. May 15, 2017) ("[B]y relying on this broad catch-all [category of defendants], Relators have essentially conceded that their allegations fail to reflect the requisite particularity….").

The FAC's allegations are made collectively against the defendants in the vast majority of

paragraphs; the FAC collectively references "Defendant Insurance Plans" over forty times but mentions Health First only twice (with not one example as to any fraudulent conduct by Health First). For instance, the FAC alleges that "AIM's UM review process caused Defendant Insurance Plans to deny Medicare beneficiaries coverage for services that should have been approved" and that "Medicare beneficiaries received…less care than the Defendant Insurance Plans certified they would pay for", but it does not provide a single example of Health First denying coverage or Health First beneficiaries receiving less care than Health First certified it would pay for. FAC ¶¶ 150, 152. Likewise, the FAC alleges that "[t]he choice to violate Medicare Rules in search of profits was openly discussed by AIM, its parent company Anthem, and the Defendant Insurance Plans", but fails to provide an example of Health First engaging in such a discussion. *Id.* ¶ 111.

The FAC, therefore, "lacks the specificity with respect to who did what when as mandated by Rule 9(b)" and instead "makes generalized accusations that the defendant entities were aware that there was a scheme." *Stop Ill. Health Care Fraud, LLC v. Sayeed*, No. 12-cv-9306, 2016 WL 4479542, at *4 (N.D. Ill. Aug. 25, 2016). While Relator spills much ink describing various decisions and actions of AIM, which "give the appearance of specificity," she fails completely to provide "the necessary factual support to tie the scheme together, which is insufficient to satisfy Rule 9(b)." *Id.* "The problem is that the complaint does not allege specific facts that make the relator's theory of liability against these defendants plausible. The bulk of the allegations in the complaint pertain to actions by [another Defendant]." *U.S. ex rel. Lisitza v. Par Pharm. Cos.*, No. 06-C-6131, 2013 WL 870623, at *4 (N.D. Ill. Mar. 7, 2013). Without particular allegations or a "representative example" of any conduct by Health First, let alone a claim submitted by Health First, the FAC does not provide close to adequate notice of "the basis of the action against

that particular defendant." *Am. At Home Healthcare & Nursing Servs.*, 2017 WL 2653070, at *5.

2. *The FAC Contains Only Two Allegations Concerning Health First, and Neither Describes Any Conduct, Let Alone Fraudulent Conduct.*

The FAC contains only two brief references to Health First, neither of which describes any conduct by Health First, let alone fraudulent conduct or any conduct that could expose it – even remotely – to FCA liability. The first, in Paragraph 23, alleges that "Anthem is also the parent company of…Health First Health Plans, Inc." This allegation is flatly incorrect, as Health First has no relationship to Anthem.[5]

The second reference to Health First, in Paragraph 118, describes the alleged conduct of AIM, not Health First. Specifically, it alleges that "AIM made this temporary change [to a "Medicare compliant" review process] for certain MA client insurance plans – including… Health First Health Plans in Florida." Even if this allegation is assumed to be true, it fails to allege any false claim or statement by Health First, or any knowledge or reckless disregard of AIM's alleged conduct. For instance, it does not allege that Health First had any role in designing, selecting, or approving the original review process, changing to (or even being aware of) a revised review process, reviewing or responding to the alleged impact of the revised process, or deciding to revert back to the original process.

In fact, there is no specific allegation anywhere in the FAC as to any improper conduct by Health First; how Health First would have had any knowledge of AIM's alleged conduct; or how AIM's conduct would have been linked to any claim for payment or statement by Health First. The FAC does not even make specific allegations about the existence, nature, duration, or any

---

[5] As noted, Relator's counsel has filed a motion requesting leave to correct this error. But this correction adds nothing to Relator's deficient allegations; and, this blatant inaccuracy reveals the unknowing manner in which Relator has accused Health First of fraud.

other feature of any contractual arrangement between Health First and AIM. The FAC is literally devoid of any allegation as to the who, what, where, when, or how of Health First's alleged involvement in any fraud. *See Bank of Am., N.A., v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).[6] The FAC's allegations against Health First are fatally deficient and must be dismissed.

## B. The FAC Fails Under Rule 9(b) Because It Contains No Allegations Connecting the Alleged Scheme to Submission of Any Claims or Statements by Health First.

The FAC is also subject to dismissal because it wholly fails to include allegations specifically linking the alleged fraudulent scheme to any claim for payment submitted by Health First to the Government. *See Teva Pharm. USA Inc.*, 2017 WL 36447, at *3 (Alonso, J.) ("[A] relator must allege the submission of false claims specifically and with particularity under Rule 9(b)."). This Court has found that "the absence of allegations specifically linking the [alleged conduct] to the actual submission of false claims is fatal to relator's claim." *Id.*; *see also U.S. ex rel. Marquis v. Northrop Grumman Corp.*, No. 09-C-7704, 2013 WL 951095, at *3 (N.D. Ill. Mar. 12, 2013) (finding that a "failure to include any details relating to any allegedly false claims presented to the Government is fatal to his FCA claim."). The FAC does not provide any particulars of any claim for payment submitted by Health First; in fact, there is literally no information about the submission of *anything* by Health First to the Government.

## C. The FAC Fails Under Rule 9(b) Because It Fails to Allege Falsity with Particularity.

Relator does not adequately allege how any claims or statements by Health First were false. Under the FCA, "[t]here are two types of 'falsity' – *i.e.,* two reasons the Government would not pay the claim if it knew the true facts. One is factual falsity; the other is legal falsity." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 41 F. Supp. 3d 323, 328-29 (S.D.N.Y. 2014). Legally false

---

[6] The FAC's *two* references to Health First are not even "enough to raise a right to relief above the speculative level" or "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

claims depend on false certifications of compliance with the law and may be either "express", when the party submitting the claim expressly and falsely certifies compliance, or "implied", when the act of submitting a claim itself implies compliance with governing law. *Id.* at 329. Relator fails wholly, however, to allege with particularity how any claim or statement made by Health First would have been either factually or legally false. More specifically, Relator has not alleged that any claim by Health First was factually false – that is, Relator has not called into question the accuracy of any information that Health First may have submitted to the Government. *See U.S. ex rel. Cieszyski v. Lifewatch Servs., Inc.*, No. 13-cv-4052, 2015 WL 6153937, at *5 (N.D. Ill. Oct. 19, 2015). And, as described below, to the extent Relator purports to allege legal falsity, she does so with insufficient particularity.[7]

*1. Relator Has Not Alleged with Particularity Any Express Certification*

Relator loosely alleges that MA plans, in contracts with CMS, must "certify that they will comply with all Medicare Rules." FAC ¶ 156. This general allegation, however, is insufficient under Rule 9(b) as to Health First, since Relator does not make any allegation about any specific contract between CMS and Health First, nor specific certification made by Health First. Thus, the FAC fails to adequately allege that Health First in particular made any such certification.

Moreover, while some statutes and regulations cited by Relator require MA plans to comply with certain rules and coverage standards, they do not require compliance with anything close to the entirety of "the Medicare statute, Medicare regulations, and all Medicare non-regulatory guidance, procedures, and policies regarding coverage and treatment of beneficiaries",

---

[7] The FAC is not clear as to which theory of falsity it alleges. This lack of specificity is another reason the FAC should be dismissed under Rule 9(b), and, in any case, as discussed below, the FAC fails under any theory.

as Relator defines the "Medicare Rules." *Id*.[8] Thus, the FAC fails to point to any express certification to compliance that would have been rendered false by the alleged conduct.

2. *Relator Has Not Alleged with Particularity Any Violation of Any Law or Regulation and Therefore Has Not Alleged with Particularity Any Implied Certification.*

To sufficiently allege implied certification, a complaint must specifically describe conduct that would violate a law or regulation material to the Government's decision to pay claims. *See U.S. ex rel. Turner v. Michaelis Jackson & Assocs., LLC*, No. 03-cv-4219-JPG, 2011 WL 13510, at *6 (S.D. Ill. Jan. 4, 2011) ("[A]t least one statute or regulation must provide the backdrop of FCA litigation."). While MA plans such as Health First are required to provide certain benefits to enrollees, the FAC fails to allege a single instance in which Health First inappropriately denied such benefits, whether as a result of AIM's conduct or otherwise. For instance, the FAC does not identify a single Health First enrollee who received an inappropriate denial of coverage. Likewise, the FAC does not specify the pre-authorization criteria allegedly applied by AIM, the Medicare coverage criteria applicable to services AIM reviewed, or how they allegedly differed.[9] Without such specificity, the FAC does not adequately allege how AIM's preauthorization process resulted in any violation by Health First of its obligations to

---

[8] Neither 42 U.S.C. § 1395w-27 nor 42 C.F.R. § 422.101 contain requirements for MA plan contracts, or other certifications. Under 42 C.F.R. § 422.504(a), contracts between CMS and MA plans must contain an agreement by the MA plan "[t]o provide….[t]he basic benefits as required under § 422.101 and….[i]n a manner consistent with professionally recognized standards of health care, all benefits covered by Medicare", and "[t]o comply with all applicable provider and supplier requirements in subpart E of this part [governing relationships between MAOs and providers]" – but not to comply with the universe of Medicare Rules.

[9] The "examples" in Paragraph 89 fail to add the requisite particularity as to how AIM's process created a barrier to needed care. Relator alleges that AIM "[d]en[ied] requests for CT scans where such scans would have been medically appropriate under Medicare Rules", but does not explain which Medicare Rules applied, which AIM Guidelines were used as to "adjacent sites" or "bilateral imaging", or whether the particular denials at issue were for medically necessary services. *Id*. Relator alleges that AIM "[r]equir[ed] an X-ray to be performed prior to approving a request for imaging" and "[r]equir[ed] physical therapy prior to approving an imaging request", yet does not allege that the requests for imaging were denied, but only that AIM used a care delivery approach requiring patients to try less costly, more efficient treatments prior to AIM authorizing payment for imaging. *Id*.

provide basic benefits.[10]  *See Grenadyor*, 772 F.3d at 1106 (dismissing complaint that failed to plead that specific patients received kickbacks); *see also U.S. ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10-C-368, 2014 WL 3583980, at *6 (N.D. Ill. July 18, 2014) (dismissing complaint "peppered with allegations that…records and data were… 'falsified,' but [that] nowhere…t[old] us what any particular record contained"); *Presser*, 836 F.3d at 779 (may dismiss if "defendant's alleged activity [is not put] into its relevant context.").

### D. The FAC Fails to Allege Materiality with Particularity.

The FAC alleges in only conclusory fashion that the alleged conduct would have been material to the Government's decisions to pay Health First, had it been aware of the conduct, and pleads no facts that bear on whether the Government refuses to make capitated payments to MA plans like Health First "in the mine run of cases" based on deficiencies in prior authorization protocols. *See Escobar*, 136 S. Ct. at 2003.[11]  Supreme Court precedent compels the dismissal of a complaint that does not allege factual support for an assertion of materiality. *See also Coyne v. Amgen*, No. 17-1522 (2d Cir. Dec. 12, 2017) (requiring "concrete allegations" allowing inference that misrepresentations "caused the Government to make the reimbursement decision."); *City of Chicago v. Purdue Pharma L.P.*, No. 14-cv-4361, 2016 WL 5477522, at *15 (N.D. Ill. Sept. 29, 2016) (dismissing complaint that failed to sufficiently allege materiality as defined in *Escobar*).

### II. The FAC Does Not Satisfy Rule 8.

The FAC fails to satisfy Rule 8's requirement that Relator "plausibly allege that…

---

[10] While the FAC points to allegedly high denial rates as support for Relator's theory that AIM's process resulted in inappropriate denials, "statistical analysis alone was insufficient to create a question of fact that the defendant actually submitted any claim for reimbursement, let alone a false claim." *U.S. ex rel. Shmushkovich v. Home Bound Healthcare, Inc.*, No. 12-cv- 2924, 2015 WL 7251934, at *6 (N.D. Ill. Nov. 17, 2015).

[11] Relator points to 42 C.F.R. § 422.504(a) for the proposition that a MA plan's compliance with certain contractual provisions "is material to performance of the contract", *id.*, but this regulation does not show materiality to *payment*. A violation may have given the Government the *option* to terminate the contract or withhold payment, but only an allegation that the Government *exercised* that option would pertain to materiality. *See Escobar*, 136 S. Ct. at 2003.

Defendants knew their statements to Medicare were false." *Rockey*, 92 F. Supp. 3d at 818.

Under Rule 8, a complaint must raise a plausible inference that a single individual in defendant's

organization knew of non-compliant conduct, knew the conduct was non-compliant, knew

submission of claims amounted to an implied certification of compliance, and still decided to

engage in the non-compliant conduct. *See U.S. ex rel. Berkowitz v. Automation Aids*, No. 13-C-

08185, 2017 WL 1036575, at *5 (N.D. Ill. Mar. 16, 2017). Because the FAC does not include a

single allegation that anyone at Health First had such knowledge, it fails under Rule 8.

**III. As a Matter of Law, the FAC's Allegations Against Health First Are Not Actionable Falsity and Are Not Material to Payment, So Must Be Dismissed Under Rule 12(b)(6).**

**A.      The Allegations in the FAC Are Not Actionable Express Certification.**

As discussed above, the FAC does not allege any factual falsity and fails to identify any

particular Health First contract that contains an express certification to compliance "with all

Medicare Rules", FAC ¶ 156. Even if it had, such a certification would not be a plausible basis

for FCA liability, as a matter of law, since a certification that "contains only general sweeping

language and does not contain language stating that payment is conditioned on perfect

compliance with any particular law or regulation" is not adequate to support an express false

certification claim. *Rockey*, 92 F. Supp. 3d at 821.

**B.      The Allegations in the FAC Are Not Actionable Implied Certification.**

The Supreme Court has held that liability can attach under an implied false certification

theory only where "the claim does not merely request payment, but also makes specific

representations about the goods and services provided; and…the defendant's failure to disclose

noncompliance with material statutory, regulatory, or contractual requirements makes those

representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001. As a MA plan, Health First

does not submit claims that make specific representations about goods or services provided;

Health First only submits demographic and medical diagnosis information about its enrollees in order to receive capitated payments. Nothing about the conduct described in the FAC could have had the effect of converting such a claim into a "misleading half-truth." *See U.S. ex rel. Lisitza et al. v. Par Pharm. Cos.*, No. 06-cv-06131, 2017 WL 3531678 (N.D. Ill. Aug. 17, 2017). Therefore, the alleged conduct could not, as a matter of law, be the basis for FCA liability.

### C. None of the Allegations in the FAC Could Have Been Material.

Further, the FAC fails because, even if the alleged preauthorization process had violated a law or regulation, that violation would have been immaterial to payment as a matter of law. Relator cites to 42 C.F.R. § 422.101 and the MA plan contractual provisions required by 42 C.F.R. § 422.504(a), but these regulations do not state that payment is conditioned on compliance with them. *Escobar*, 136 S. Ct. at 2003 (stating the language of regulations is "relevant" to whether compliance therewith is material to payment). In fact, the applicable statute provides a range of remedies other than revoking payment, including for MA plans that "fail[] substantially to provide medically necessary items and services that are required…to be provided." *See* 42 U.S.C. § 1395w-27(g). This allows the Government to evaluate and respond to particular non-compliant conduct, without affecting payment.[12] *Escobar*, 136 S. Ct. at 2004.

### IV. The FAC Must Be Dismissed Under the FCA's Public Disclosure Bar.

The FCA provides that a "court shall dismiss an action… if substantially the same allegations or transactions as alleged in the action…were publicly disclosed…in a congressional, Government Accountability Office, or other Federal report, hearing, *audit*, or investigation." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). This court has held that "[t]he allegations in a

---

[12] Certain allegations in the FAC support an inference that the alleged non-compliance would *not* have been material to payment; for instance, Relator alleges multiple CMS audits examining the AIM review process, after which CMS continued to make capitated payments to the audited MA plans. *Escobar*, 136 S. Ct. at 2003.*; compare to U.S. v. Am. at Home Healthcare & Nursing Servs.*, 2017 WL 2653070, at \*9.

complaint are publicly disclosed when the critical elements exposing the transaction as fraudulent are placed in the public domain," which occurs not only "when the information is open or manifest to the public at large, but also where the facts disclosing the fraud itself are in the Government's possession." *U.S. ex rel. Frawley v. McMahon*, No. 11-cv-4620, 2016 WL 5404598, at *8 (N.D. Ill. Sept. 28, 2016). The FAC acknowledges that multiple CMS audits of MA plans publicly revealed the very conduct that is the basis of the alleged FCA violation.[13] Thus, based on Relator's allegations, the conduct at issue was publicly disclosed.

Once the Court has determined there has been a "public disclosure", it must next determine whether Relator's allegations are "based upon" the public disclosure. "[A] relator's FCA complaint is 'based upon' publicly disclosed allegations or transactions when the allegations in the relator's complaint are *substantially similar* to publicly disclosed allegations." *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 281 (7th Cir. 2016). Because Relator includes the CMS audits and their findings (of deficient prior authorization processes) as support for her allegations, the FAC's allegations are substantially similar to (and thus 'based upon') this publicly disclosed conduct. *See U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd. Inc.*, 806 F.3d 946, 952 (7th Cir. 2015) (noting that where a "claim rests on…precisely what DWD found in its audit…[the] claim is plainly 'based on' the DWD's public disclosure of this information.").

A complaint based on publicly disclosed allegations may only survive dismissal if the relator is an "original source" – an individual who either voluntarily disclosed information to the Government prior to the "public disclosure" or who has knowledge that is independent of and materially adds to the publicly disclosed allegations. 31 U.S.C. § 3730(e)(4)(B). Relator does not allege that she voluntarily disclosed information to the Government prior to CMS' audits.

---

[13] *See* ¶¶ 53, 107, 119, 120, 136.

When Relator's allegations are the same as the conclusions formed by CMS after multiple audits, Relator's allegations do not "materially add" to those that have been publicly disclosed. *See Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 721 (7th Cir. 2017). Thus, Relator does not qualify as on original source.

## V.      The Court Should Dismiss the FAC with Prejudice.

Relator's claims against Health First cannot be saved *via* amendment, and therefore should be dismissed with prejudice. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Leave to amend the pleadings may be denied for 'apparent or undeclared reasons' such as…'futility of the amendment'….") (citation omitted). Relator's allegations are subject to the FCA's public disclosure bar and therefore will never be able to survive a motion to dismiss. Further, the conduct described in the FAC does not, as a matter of law, give rise to any falsity, nor would it have been material to the Government's decisions to make capitated payments to Health First. *See U.S. ex rel. Camillo v. Ancilla Sys., Inc.*, No. 03-cv-0024 DRH, 2005 WL 1669833, at *4 (S.D. Ill. July 18, 2005).

Relator has directed no substantive allegations at Health First that could lead to any inference that she has any knowledge at all of Health First's affairs, its utilization management processes, or any capitation payments made to or claimed by Health First, nor has she offered any indication that there is any prospect that she will gain such knowledge. Relator has baselessly included Health First in a collection of defendants and her failure to particularize any conduct or a single claim by Health First is fatal to the FAC. *See Teva Pharm. USA Inc.*, 2017 WL 36447, at *3 (Alonso, J.). The Court should not countenance Relator's attempt to use the civil discovery process as a fishing expedition into the internal affairs of Health First, when she has no grounds for accusing Health First of fraud, or allow Relator to continue to publicly tarnish Health First's reputation. The Court should dismiss the FAC *with prejudice*.

## CONCLUSION

WHEREFORE, Health First respectfully requests that the Court dismiss the FAC with prejudice.

February 12, 2018

s/Jill S. Vorobiev

Jill S. Vorobiev (6237734)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
70 West Madison Street, Suite 4800
Chicago, IL 60602
Tel: (312) 499-6300
Fax: (312) 499-6301
Email: jvorobiev@sheppardmullin.com

Robert T. Rhoad (*pro hac vice*)
Erica J. Kraus (*pro hac vice*)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave, N.W., Suite 100
Washington, D.C. 20006
Telephone: (202 747-1900
Fax: (202 747-1901
Email: rrhoad@sheppardmullin.com
Email: ekraus@sheppardmullin.com

Danielle Vrabie (*pro hac vice*)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Fax: (212) 653-8701
Email: dvrabie@sheppardmullin.com

*Counsel for Defendant Health First
Health Plans, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 12, 2018, the foregoing Defendant Health First Health Plans Inc.'s Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Complaint was filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.


s/Jill S. Vorobiev
One of the Attorneys for
Defendant Health First Health Plans, Inc.