# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, ex rel. DR. SUSAN NEDZA, ) | |
| ) | |
| Relator, ) | |
| ) | |
| v. ) | Case No. 15-cv-6937 |
| ) | |
| AMERICAN IMAGING MANAGEMENT, INC., ) | Judge Jorge L. Alonso |
| et al., ) | Magistrate Judge Cox |
| ) | |
| Defendants. ) | |

**PRIORITY HEALTH'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT**

## INTRODUCTION

The Relator has brought this *qui tam* False Claims Act ("FCA") lawsuit against American Imaging Management, Inc. ("AIM"), its parent company Anthem, Inc. ("Anthem"), and 26 different insurance companies that Relator states sponsor Medicare Advantage ("MA") plans (collectively, the "MA Plans"). The Relator's Second Amended Complaint (*see* Dkt. 121, hereafter "SAC") alleges that each of the 26 MA Plans separately contracted with AIM for Utilization Management ("UM") review services over unspecified time periods. SAC ¶ 6.

Priority Health is one of the 26 MA Plans. Two years after this action was initially filed under seal, and despite two amendments to the Complaint, the Relator has not made a single specific allegation about Priority Health that would support FCA liability. In fact, over its forty-seven (47) pages, the SAC's only allegation naming Priority Health states that Priority Health is a non-Anthem insurance plan (a fact that, in the broader context of Relator's claims, actually exonerates Priority Health instead of implicating it). SAC ¶ 23. Every other one of the SAC's allegations that the Relator could possibly have intended to apply to Priority Health takes the form of a blanket statement about the 28 "Defendants" or the 26 "Defendant Insurance Plans," generally—with no details of what Priority Health did, when it did it, how it did it, or how it supports the Relator's claims.

It is well-established that the Relator's "group pleading" fails to satisfy Federal Rule of Civil Procedure 9(b), which applies to FCA claims. That alone requires dismissal of the SAC with respect to Priority Health. Separately, the SAC fails to sufficiently plead several required elements of both of the FCA claims it asserts, including falsity, materiality, knowledge, and actual submission by Priority Health of any claims for payment. Furthermore, the FCA's public

1

disclosure bar prevents the Relator's claims from proceeding. For all of these reasons, the Court should dismiss the SAC in its entirety as to Priority Health, with prejudice.[1]

## THE COMPLAINT'S ALLEGATIONS

The SAC alleges AIM independently contracted to provide pre-authorization review services to the Defendant MA Plans. SAC ¶¶ 5–6, 23. The SAC asserts that AIM designed a pre-authorization review "scheme" that resulted in the MA Plans improperly denying coverage to plan members in violation of Medicare rules, including national and local coverage determinations ("NCDs/LCDs"). SAC ¶¶ 6–10. According to the SAC, the "scheme" involved AIM relying on its own internal clinical guidelines ("AIM Guidelines"), rather than the clinical guidelines in the NCDs/LCDs established by the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS") and its regional Medicare Administrative Contractors ("MACs") to make pre-authorization coverage determinations. *Id.* The SAC claims that AIM intentionally used the AIM Guidelines to increase the denial rates on requests for payment for certain diagnostic imaging services (*e.g.*, CT scan, MRI, etc.). *Id.* This "scheme" allegedly boosted AIM and its MA Plan clients' profit margins by denying care to Medicare beneficiaries. *Id.* ¶¶ 45–50.

Next, the SAC alleges that the MA Plans contracted with CMS under the MA program, and that they made false statements in those contracts. SAC ¶¶ 4, 156. The SAC alleges that, in these contracts, the MA Plans certified that "they will comply with all Medicare Rules" and that those certifications were false because AIM's coverage determinations on the MA Plans' behalf "did not comply with Medicare Rules." *Id.* ¶ 156.

---

[1] Priority Health also joins in the arguments contained in the separate briefing by co-defendant Health First Health Plans, Inc. in support of its motion to dismiss, Dkt. 130, and adopts those arguments as if fully set forth herein. Priority Health anticipates that other co-defendants will also be filing motions to dismiss the SAC, and requests to join in all arguments raised in any such motions, to the extent applicable to Priority Health, as if fully set forth herein.

2

As previously noted, the SAC includes no allegation regarding any statement, act, omission, or knowledge of Priority Health, specifically.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). To state a facially plausible claim, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery" under the chosen legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007); *see also Grabianski v. Bally Total Fitness Holding Corp.*, 891 F. Supp. 2d 1036, 1046 (N.D. Ill. 2012) (granting motion to dismiss). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation omitted). As set forth more fully below, with respect to Priority Health, the SAC relies solely on such labels, conclusions, and formulaic recitations and it should be dismissed on that basis.

**I.     The Relator's FCA Claims Fail Because She Failed to Plead the Submission of a False Claim or the Making of a False Statement.**

The Relator attempts to plead two types of FCA claims. Count I of the SAC alleges that Defendants violated the FCA's "False Claims" prong (31 U.S.C. § 3729(a)(1)(A)). Count II of the SAC alleges that Defendants violated the FCA's "False Statements" prong (31 U.S.C. § 3729(a)(1)(B)). For the following reasons, the Relator has failed to sufficiently plead a claim upon which relief can be granted under either prong.

3

### A. Count I must be dismissed because the Relator has not sufficiently pled the submission of a false claim under 31 U.S.C. § 3729(a)(1)(A).

#### 1. Rule 9(b) applies and the Relator has failed to meet its particularity requirement.

To state a claim against Priority Health under 31 U.S.C. § 3729(a)(1)(A), the Relator must plead *as to Priority Health*: (1) a false claim; (2) presented by Priority Health to the United States for payment or approval; (3) with knowledge that the claim was false. *See U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants*, 570 F.3d 907 (7th Cir. 2009).

The Relator's FCA claims against Priority Health are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) ("Rule 9(b)"). *See U.S. ex rel. Radke v. Sinha Clinic Corp.*, No. 12 cv 6238, 2015 WL 4656693, at *2 (N.D. Ill. Aug. 5, 2015) (citing *U.S. ex rel. Gross v. Aids Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005)). Thus, each count of the SAC must "(1) identify *specific* false claims for payment or *specific* false statements made in order to obtain payment; (2) if a false statement is alleged, connect that statement to a specific claim for payment and state who made the statement to whom and when; and (3) briefly state why those claims or statements were false." *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (emphases in original); *U.S. ex rel. Keen v. Teva Pharms. USA Inc.*, No. 15 C 2309, 2017 WL 36447, at *3 (N.D. Ill. Jan. 4, 2017) (Alonso, J.). The Relator must allege "the who, what, where, when and how of the alleged fraudulent conduct." *See Keen*, 2017 WL 36447, at *2 (quotations and citations omitted). Further, under Rule 9(b), the SAC "should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *See Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709, at *4 (N.D. Ill. May 29, 2009) (quotations omitted); *see also U.S. v. Sanford-Brown, Ltd.*, 788 F.3d 696, 706 (7th Cir. 2015) (affirming

4

dismissal of defendant where relator "reference[d] 'Defendants' dozens of times in his amended complaint" without distinguishing that specific defendant's alleged conduct), *superseded in part on other grounds by U.S. v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016).

The Relator generally alleges, in conclusory fashion, a private "scheme" by AIM to generate a high percentage of pre-authorization denials on behalf of its MA Plan clients. SAC ¶¶ 5–10. The SAC lumps the 26 MA Plan Defendants (Anthem and non-Anthem) together without informing Priority Health of the specific fraudulent acts that constitute the basis of the FCA claims against Priority Health in particular, as Rule 9(b) requires. The SAC is devoid of any allegations specific to Priority Health as to when or how it knew, reviewed, accepted, or otherwise participated in AIM's alleged scheme. The SAC also offers no information about who at Priority Health allegedly made a false statement, when or where such a statement was made, or how it was communicated. The SAC offers no specifics as to any actual claim for payment submitted by Priority Health, let alone the manner in which the claims were false. The SAC accordingly must be dismissed with regard to Priority Health.

**2. The Relator has alleged no claim for payment.**

Moreover, apart from its failure to meet Rule 9(b)'s requirements, the SAC must be dismissed because the "scheme" it alleges cannot give rise to false claims liability under 31 U.S.C. § 3729(a)(1)(A). That law is used by the federal government as a vehicle "for recouping losses suffered through fraud" where health care providers have submitted individual fraudulent reimbursement claims for ***payment*** directly from CMS. *Sanford-Brown, Ltd.*, 788 F.3d at 700. Here, the alleged scheme involved AIM's pre-authorization ***denial*** of claims for coverage made to Priority Health by its MA plan members. Relator does not specifically allege that Priority Health submitted any claims for payment or reimbursement to the Government. Rather, as the

5

SAC explains, CMS pays a Medicare Advantage plan, such as Priority Health, a capitation rate (a fixed amount per member per month) based on each beneficiary's geographic location, income status, gender, age, and health status. SAC ¶ 30. Because the SAC alleges no false claims for payment made by Priority Health, the SAC does not state a claim under 31 U.S.C. § 3729(a)(1)(A) and Count I should be dismissed. *See, e.g., U.S. ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 811 (N.D. Ill. 2017) (granting summary judgment to FCA defendant because "the FCA focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme.") (citation and internal quotation marks omitted).

### B. Count II must be dismissed because the Relator has failed to sufficiently allege a false statement under 31 U.S.C. § 3729(a)(1)(B).

To sufficiently plead a violation of 31 U.S.C. § 3729(a)(1)(B) (the FCA's "false statements" prong) against Priority Health, the Relator must allege that: (1) Priority Health made a statement material to a false claim; (2) the statement was false; and, (3) Priority Health knew the statement was false. *See Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 998 (7th Cir. 2014). The Relator has failed to identify a single statement made by Priority Health, let alone that such a statement was false, known by Priority Health to be false, material to a claim for payment, and known to be such by Priority Health. Therefore, the Relator has failed to sufficiently allege any the basic elements of a false statement FCA claim.

Instead, Relator's false statement claim relies solely upon her blanket allegation that certifications contained in the contracts between the MA Plans and CMS, whereby the MA Plans allegedly certify "they will comply with all Medicare Rules," were false. SAC ¶ 156. According to Relator, these certifications were false because AIM's coverage determinations "did not comply with Medicare Rules." *Id.*

6

Despite the Relator's own responsibility for drafting the AIM Guidelines as Chief Medical Officer, she has not identified any express false certification. The Relator has failed to plead: (1) which of the AIM Guidelines violated Medicare rules; (2) a single instance in which Priority Health denied coverage in violation of a Medicare rule; (3) a single Priority Health MA plan member who, in violation of a Medicare rule, did not receive treatment; (4) a particular type of treatment for which Priority Health improperly denied coverage; or (5) any false claim submitted by Priority Health to the Government for payment or any false statement made to support any such claim for payment. In fact, the SAC reveals nothing more than a contractual relationship between Priority Health and CMS and an alleged breach of that contract, which is insufficient to support a claim under the FCA. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) ("The False Claims Act is not . . . a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (internal quotation omitted).

The Relator has also not identified an "implied" false certification. Under the implied certification theory, by submitting a claim for payment, the defendant is deemed to have impliedly certified compliance with all material statutory, regulatory, or contractual requirements. *See Escobar*, 136 S. Ct. at 1995–96. To sufficiently state an implied certification theory, an FCA claim must specifically describe conduct that would violate a law or regulation material to the government's decision to pay claims. *See U.S. ex rel. Turner v. Michaelis Jackson & Assocs., LLC*, No. 03-cv-4219-JPG, 2011 WL 13510, at *6 (S.D. Ill. Jan. 4, 2011) ("[A]t least one statute or regulation must provide the backdrop of FCA litigation."). As discussed, the SAC does not specify the pre-authorization criteria allegedly applied by AIM, the Medicare coverage criteria applicable to services AIM reviewed, or how they allegedly differed. Without such specificity, the SAC does not adequately allege how AIM's pre-authorization

7

process resulted in any violation by Priority Health of its obligations to provide appropriate benefits. Even if the Relator could point to a regulation that Priority Health violated, which she does not,[2] "[v]iolating a regulation is not synonymous with filing a false claim." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014). This Court has found that "the absence of allegations specifically linking the [alleged conduct] to the actual submission of false claims is fatal to relator's claim." *See Keen*, 2017 WL 36447, at *3.

## II. The Relator's SAC Fails to Allege Materiality Sufficient to Support an FCA Claim.

The SAC also fails to allege that Priority Health did not comply with legal obligations that were material to the Government's payment decision. For the Relator to defeat a motion to dismiss, she must allege that Priority Health violated material statutory, regulatory, or contractual requirements. *Escobar*, 136 S. Ct. at 2001–02. In other words, the SAC must allege that the violations at issue are so central that the Government would not have paid Priority Health's claims for reimbursement had it known of these supposed violations. *See Id*. at 2004. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Escobar*, 136 S. Ct. at 2001–02. Instead, what matters is the Government's actual payment behavior. *Id.* at 2004 (recognizing "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on non-compliance with the particular statutory, regulatory, or contractual requirement"). The *Escobar* materiality standard in an FCA case is "rigorous" and "demanding." *Sanford-Brown, Ltd.*, 840 F.3d at 447 (citing *Escobar*, 136 S. Ct. at 2002–03, 2004 n.6). An FCA relator must allege materiality with particularity to defeat a motion to dismiss. *Escobar*, 136 S. Ct. at 2004 n.6.

---

[2] The most the Relator alleges is that by submitting claims for payment, Priority Health impliedly certified compliance with 42 C.F.R. § 422.504(a) (providing that "The MA organization agrees to comply with all the applicable requirements and conditions set forth in this part"). *See* SAC ¶ 32.

8

Here, the Relator makes only a conclusory (and not particular) allegation of materiality: "Plaintiff United States, unaware of the falsity of the claims and/or statement or records, and in reliance on their accuracy, paid for claims that would otherwise not have been allowed." SAC ¶ 169. This conclusory allegation alone is not sufficient to establish materiality under *Escobar*. *See U.S. ex rel. Durkin v. Cty. of San Diego*, No. 15cv2674-MMA (WVG), 2018 WL 376581, at *13 (S.D. Cal. Jan. 11, 2018) (statement that "the FAA would not have disbursed funding had it known Defendant's assurances" was "conclusory" and thus insufficient to plead materiality); *U.S. ex rel. Mateski v. Raytheon Co.*, No. 2:06-CV-03614-ODW(KSx), 2017 WL 3326452, at *7 (C.D. Cal. Aug. 3, 2017) (characterizing a similar allegation as "completely conclusory and thus insufficient"). Without any additional allegations as to the "likely or actual" effect of the alleged misconduct on the Government's payment behavior, the SAC fails to state an FCA claim on which relief can be granted. *Escobar*, 136 S. Ct. at 2002.

The Relator does not allege that Priority Health's purported conduct, specifically, had a "likely or actual" effect on CMS's payment decisions because she cannot in good faith do so. The SAC fails to allege any instance in which CMS has ever denied payment or terminated any MA plan's contract because it concluded that the plan's express or implied certifications were false in the manner that the SAC alleges Priority Health's certifications were false here. *See U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (affirming dismissal where relator had not alleged that government would have denied claims if it knew of the alleged non-compliance); *Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016) (dismissing case where relator did not "alleg[e] that the government consistently refuses to pay claims that violate the allegedly material term"). Therefore, the SAC does not sufficiently allege materiality.

In fact, the Relator admits that the Government was actually aware of, audited, and criticized AIM's UM review procedures. SAC ¶¶ 73, 107, 119, 120, 136, 137. Yet tellingly, the Relator does not allege that CMS has denied requests for payment by Priority Health or any of the MA Plan defendants because of AIM's purportedly flawed UM review procedures. After nearly a decade since the first CMS audit alleged in the SAC, and two years of investigation while the Relator's action was under seal, CMS continues to allow Priority Health to participate in the MA program and pays it to provide coverage to its plan members. Accordingly, any alleged misrepresentation arising out of Priority Health's approach to coverage determinations cannot be material under the FCA, and the Relator's claims should be dismissed. *See City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1079 (N.D. Ill. 2016) (Alonso, J.) (finding allegations of materiality insufficient where "the City represents that is still paying for claims based on defendants' alleged misrepresentations"); *see also Escobar*, 136 S. Ct. at 2003–04 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.").[3]

The Relator will no doubt argue that CMS expressly conditions reimbursement on compliance with "all the applicable requirements and conditions" of the MA program. SAC ¶ 32 (quoting 42 CFR § 422.504(a); 42 U.S.C. § 1395w-27). But such a generic statement cannot serve as a predicate to FCA liability. *Escobar*, 136 S. Ct. at 2004 ("[I]f the Government required

---

[3] For similar reasons, Relator has failed to allege that Priority Health *knew* that compliance with the applicable Medicare Rules were material to CMS's payment decisions. To defeat a motion to dismiss, a relator must allege that the defendant "knowingly violated a requirement that *the defendant knows is material* to the Government's payment decision." *United States v. Luce*, 873 F.3d 999, 1006 (7th Cir. 2017) (emphasis in original) (quoting *Escobar*, 136 S. Ct. at 1996)).

10

contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material. The False Claims Act does not adopt such an extraordinarily expansive view of liability."). The SAC therefore fails to adequately allege materiality and must be dismissed.

### III. The SAC Fails to Allege that Priority Health Acted Knowingly.

As previously noted, to sufficiently plead either of her FCA claims, the Relator must allege that Priority Health acted knowingly with respect to any alleged false claim or false statement. *See supra* §§ I.A.1., I.B. The SAC alleges nothing with respect to actual or constructive knowledge of purported falsity on Priority Health's part; instead, it relies on generalized, group-pled allegations lumping all 28 Defendants together, along with a handful of more specific examples focused entirely on other Defendants that are unrelated to Priority Health. The SAC makes no allegations with respect to how this purported knowledge of other Defendants ever was or should have been disseminated to Priority Health. This approach is plainly insufficient under the pleading standards set forth in *Iqbal* and *Twombly*, and is yet another reason why both FCA claims against Priority Health should be dismissed. *See Twombly*, 550 U.S. at 555, 562 (complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery" under the particular legal theory and "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *U.S. ex rel. Pilecki–Simko v. Chubb Inst.*, 443 F. App'x 754, 760–61 (3d Cir. 2011) (conclusory allegations that defendant "knows that this claim . . . is false" or acted "knowingly" are insufficient to sustain FCA claim in the face of motion to dismiss on Rule 12(b)(6) grounds).

**IV.    The Relator's Claims Are Barred Due to Prior Public Disclosure.**

The Relator's claims against Priority Health must also be dismissed because they are based on alleged conduct that was publicly disclosed in the course of multiple CMS audits of various MA Plans years before the Relator first brought this *qui tam* lawsuit—indeed, in at least one case, years before the Relator even began working at AIM.  Congress wrote directly into the FCA's text an explicit bar against certain types of *qui tam* claims, including those based on "allegations or transactions" that already have been publicly disclosed via, *e.g.*, audits.  *See* 31 U.S.C. § 3730(e)(4)(A).  Before March 23, 2010, that bar was explicitly jurisdictional; on and after that date, while no longer phrased as jurisdictional, it still has a similar practical effect at this stage of the litigation—requiring dismissal of *qui tam* claims unless the Government objects:

| 31 U.S.C. § 3730(e)(4)(A)<br>**Pre-Amendment Text** | 31 U.S.C. § 3730(e)(4)(A)(ii)<br>**Amended Text (effective March 23, 2010)** |
|---|---|
| "***No court shall have jurisdiction*** over an action under this section based upon the public disclosure of allegations or transactions in a . . . Government Accounting Office report, hearing, audit, or investigation . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."<br>(Emphasis added.) | "***The court shall dismiss*** an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."<br>(Emphasis added.) |

Where, as here, a *qui tam* complaint's allegations span time periods both before and after the 2010 amendment, the Seventh Circuit repeatedly has applied the ***pre***-amendment version and treated the public disclosure bar as jurisdictional.  *See Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 717–18 (7th Cir. 2017) (citing *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 271 n.5 (7th Cir. 2016)).

The Relator purportedly learned of Defendants' alleged scheme during her AIM employment, which began in 2012.  SAC ¶ 16.  She filed her original complaint, under seal, in

12

August 2015. Yet the Relator herself alleges that CMS audits of various MA Plans had, starting in 2007 or earlier, already revealed that those plans were running afoul of Medicare rules and regulations by relying on the same AIM Guidelines and procedures for UM review of which the Relator now complains:

| SAC Paragraph(s) | Public Disclosure(s) Referenced |
|---|---|
| 107 & 136 | Pre-2008 CMS audit of an Anthem MA plan that allegedly cited that plan for violating Medicare program rules by relying on AIM's UM review process. |
| 137 | Further CMS audit of an Anthem MA plan sometime between 2008 and 2011–2012 that purportedly found AIM's practices to be "so improper that Anthem pulled its own MA insurance plans out of the full AIM UM review process." |
| 119 | Late 2013/early 2014 CMS audit of a non-Anthem MA plan that allegedly found "erroneous request denials" by AIM. |
| 73 & 120 | 2014 CMS audits of two more MA Plans that resulted in citations based on AIM's purported practices alleged in the SAC. |

These alleged CMS audits are "public disclosures" that bar FCA claims under the plain language of the FCA and Seventh Circuit case law. *See* 31 U.S.C. § 3730(e)(4)(A)(ii); *Bellevue*, 867 F.3d at 719–20; *U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd. Inc.*, 806 F.3d 946, 952 (7th Cir. 2015) (where claim rested precisely on audit findings, claim was "plainly based on" the public disclosure of this information) (internal citation and quotation omitted).

The SAC's allegations are "substantially the same" as the various alleged CMS audit findings just referenced. Indeed, the SAC's allegations purportedly track the findings of those audits so closely that the Relator cites the audit findings as the basis on which she asserts that Defendants knew or should have known that their claims for payment, and associated (express or implied) certifications of compliance with program rules, were false on account of their reliance upon AIM's Guidelines and practices. *See, e.g.,* SAC ¶¶ 73 ("Further, AIM was aware—through CMS audits of [two Plan Defendants in] 2014—that AIM's specific practice violated Medicare Rules."), 107 ("Further, by at least 2008, AIM also knew its UM review process violated

13

Medicare Rules, because by that point, CMS had cited Anthem in an audit related to cases adjudicated by AIM."), 136 ("From at least 2008 to 2011, Anthem, Inc. directed its insurance plans to use the AIM UM review process for Medicare requests . . . despite a [sic] CMS audit findings prior to 2008 that criticized an Anthem plan (through AIM) for ignoring Medicare Rules in the AIM review process."); *see also* SAC ¶¶ 117–120, 137.  The Relator alleges that the same improper conduct continued after the audits were completed, SAC ¶ 136, but both the Seventh Circuit and this Court have ruled that such "time period extensions" are insufficient to save relators' cases from the public disclosure bar.  *Bellevue*, 867 F.3d at 719–20 (allegations concerning conduct occurring after CMS audit, where such conduct was "substantially similar" to the publicly disclosed information, fell within public disclosure bar and were dismissed); *U.S. ex rel. Lisitza v. Par Pharm. Cos.*, No. 06 C 06131, 2017 WL 3531678, at *13 (N.D. Ill. Aug. 17, 2017) ("[E]xpansion of [the] time period over which [a] fraud scheme operated [is] insufficient to clear [the] substantial similarity hurdle.") (citation omitted).

An FCA claim based on publicly disclosed allegations must be dismissed unless the relator is an "original source" of such information.  31 U.S.C. § 3730(e)(4)(B).[4]  Here, the Relator is not an "original source."  She did not "voluntarily disclose[] to the Government the information on which allegations or transactions in [her] claim[s] are based" ***prior to*** the audits just discussed (which began before 2008—more than four years before she even started working at AIM).  *See* 31 U.S.C. § 3730(e)(4)(B).  Nor, for reasons just discussed, has the Relator shown she "has knowledge that is independent of ***and*** materially adds to the publicly disclosed allegations or transactions and has voluntarily provided the information to the Government

---

[4] Under the amended version of 31 U.S.C. § 3730(e)(4)(A)(ii), the Government could also prevent dismissal by advising the Court of its opposition.  As noted above, since the Relator's allegations here span the pre- and post-amendment time periods, Seventh Circuit law directs this Court to apply the pre-amendment (jurisdictional) version of the statute, which does not grant the Government such power to prevent dismissal.

before filing [her] action." *See Cause of Action*, 815 F.3d at 282–83 (quoting 31 U.S.C. § 3730(e)(4)(B)) (emphasis added). She cannot simultaneously maintain that her allegations both: (1) track the various CMS audit findings between pre-2008 and 2014 so closely that the existence of those audit findings proves the Defendants acted knowingly with respect to her allegations, and (2) are sufficiently independent of the audit findings as to contribute materially to the Government's understanding of the alleged scheme after audit completion.

Accordingly, the Relator's claims are barred as a matter of law due to prior public disclosure before the Court even reaches the element-by-element sufficiency of her pleading.

## CONCLUSION

The Relator has failed to advance a single specific allegation against Priority Health that supports False Claims Act liability. The Relator has also failed to sufficiently plead several required elements of each of her FCA claims—most notably that any of the purported non-compliance or alleged false statements set forth in the SAC would have been material to CMS's decisions to keep making MA capitation payments to Priority Health. Finally, the Relator is not the original source of the SAC's allegations and the FCA's public disclosure provision therefore bars her from basing a *qui tam* lawsuit on them. The Relator will not be able to cure these defects by re-pleading, for a third time, the claims she first brought in 2015, and she should not be allowed to further investigate this matter in an effort to amend. *See Fowler*, 496 F.3d at 740.

For these reasons, Priority Health respectfully requests that this Court grant its Motion to Dismiss Relator's Second Amended Complaint with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | PRIORITY HEALTH |
|  | By: /s/ *John C. Kocoras* |
| Dated: March 13, 2018 | Jeffrey G. Muth (P65041)<br>Jason M. Crow (P78718)<br>MILLER JOHNSON<br>45 Ottawa Avenue SW, Suite 1100<br>Grand Rapids, MI 49503<br>(616) 831-1700<br>muthjg@millerjohnson.com<br>crowj@millerjohnson.com |
|  | John C. Kocoras<br>Sheila M. Prendergast<br>MCDERMOTT, WILL & EMERY LLP<br>444 West Lake Street<br>Chicago, IL 60606-0029<br>(312) 372-2000<br>jkocoras@mwe.com<br>sprendergast@mwe.com |
|  | *Counsel for Defendant Priority Health* |

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 13, 2018, the foregoing *Defendant Priority Health's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint* was filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

          By: /s/ John C. Kocoras
          Attorney for Defendant Priority Health