UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, EX REL. DR. SUSAN NEDZA, | ) | |
| | ) | |
| Plaintiff-Relator, | ) | No. 15-CV-6937 |
| | ) | |
| v. | ) | JUDGE JORGE L. ALONSO |
| | ) | |
| AMERICAN IMAGING MANAGEMENT, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Relator's Response in Opposition to Defendants' Motion to Stay All Discovery**

## I.    Introduction

This case, brought by a knowledgeable whistleblower insider, exposes a widespread

fraud of enormous significance to the Medicare Advantage program and its beneficiaries. The

Insurance Plan Defendants (all Defendants other than AIM and its parent company Anthem Inc.)

operate insurance plans that provide healthcare coverage under Medicare Advantage ("MA") for

senior citizens through a managed care model, rather than a traditional fee-for-service model.

The most fundamental obligation of private insurers in the MA program is that they certify that

they provide to MA beneficiaries all benefits covered under traditional Medicare. 42 U.S.C. §

1395w-22(a)(1)(A). This "basic benefit" rule is at the core of the MA program: it protects

patients from being wrongly denied care by private insurers participating in the Medicare

program, and ensures that the government receives the full value of each monthly payment to the

MA insurance plans. Here, in clear and intentional violation of this fundamental obligation, the

Insurance Company Defendants hired AIM—and paid it handsomely—to <u>deny</u> medical care to

which beneficiaries were entitled, knowing that, in doing so, AIM violated Medicare coverage

obligations and rules designed to protect beneficiaries. Then, to obtain billions of dollars of

1

government payments, Defendants' falsely certified compliance with the Medicare basic benefit rule (and other rules).

Relator Dr. Susan Nedza was the Chief Medical Officer for AIM. Prior to that, Dr. Nedza was a high-level official at the Centers for Medicare and Medicaid Services ("CMS"), the agency that administers the Medicare program. She is an expert insider with extensive information about the mechanisms of fraudulent denials by AIM and the other Defendants, as well as firsthand evidence of the deliberate choice to violate Medicare rules in search of profits. As the Second Amended Complaint demonstrates ("SAC," ECF No. 121), Dr. Nedza is anything but a parasitic relator exploiting public reports, nor a relator with negligible information on a fishing expedition. Her knowledge is extensive, and allegations detailed, limited only by her high-level position.

When Defendants refused to follow Medicare rules and provide all the services to which MA beneficiaries are entitled, Dr. Nedza voluntarily resigned from AIM in January 2015 and filed this lawsuit in August 2015 to expose the systemic Medicare fraud. Litigation was on hold for more than two years while under seal for the government's investigation. With the seal finally lifted, Defendants now seek to prevent the <u>start</u> of <u>any</u> discovery.

Further delay is not warranted in this case, which is already nearly three years old. Defendants' Motions to Dismiss, ECF Nos. 101, 133, 144, 149, 152, 157, 160, attempt to hide from the compelling facts of the SAC and elevate form over substance. Contrary to Defendants' assertions, these motions raise generic pleading arguments routinely encountered in False Claims Act ("FCA") litigation. Neither the motions to dismiss, nor the Defendants' Motion to Stay, ("Mot." ECF No. 170), support a total stay of discovery for this case, especially given that Relator has proposed limited initial discovery and remains willing to negotiate any concrete and

legitimate burden objection. While the motions to dismiss are being briefed and considered by the Court, the start of discovery can easily be sequenced and managed, but it should not be stayed entirely.

## II. Motions to dismiss do not require, nor typically warrant, a total stay of discovery.

While stay decisions are committed to the court's discretion under Rule 26(c), a motion to dismiss alone is not "good cause." Defendants erroneously claim that a "stay is warranted where, as here, Defendants moved to dismiss a complaint pursuant to Rule 12(b)(6)." Mot. at 11. To the contrary, "one argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12-cv-1662, 2013 WL 690613, at *2 (N.D. Ill. Feb. 20, 2013). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Id.* Rather, "the general rule [is] that a pending garden-variety motion to dismiss does not warrant a stay of discovery." *Tamburo v. Dworkin*, No. 04-cv-3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010). *Cf. SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 n.11 (7th Cir. 1988) ("Discovery need not cease during the pendency of a motion to dismiss.").

Thus, stays are warranted only in exceptional circumstances, such as the extraordinary burden recognized specifically for antitrust cases. *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-cv-1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008). No such exceptional discovery rules apply to FCA cases. *Cf. United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133, 2013 WL 5348536, at *2 (S.D. Ind. Sept. 24, 2013) (declining to apply different "discovery rules or policies" for FCA cases). If burden is the justification for a stay request,

defendants must present specific burden objections; generalized claims are not sufficient. *United States ex rel. Robinson v. Indiana Univ. Health Inc.*, No. 1:13-cv-02009, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015) ("A party resisting discovery on the basis of undue burden must show with specificity that the discovery requests are issue are objectionable.").

A stay of discovery may also be considered where the motion to dismiss raises a credible "'threshold' issues such as standing, jurisdiction, or qualified immunity." *Id.* at *7. However, even in such instances a stay of discovery is only granted rarely. As this Court has held, "a motion to stay discovery will not be granted every time a potentially dispositive [threshold] issue is placed before the court." *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996). Indeed, in *Builders Association*, the court denied the request to limit discovery based on a challenge to standing where the plaintiff would not "encounter great difficulty" in overcoming that objection. *Id.*

In this instance, Defendants' motions to dismiss raise neither an exceptional nor a credible threshold issue to justify a stay. Ultimately, discovery must be managed "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1. While this case is not part of the Mandatory Initial Discovery Pilot Project, that effort also confirms the preference in this District for the full and early disclosure of information, without stays, to promote efficiency.

## III.     Defendants' motions to dismiss do not warrant a total stay of discovery.

Even a cursory review of the motions to dismiss reveals only routine pleading challenges and a facially meritless public disclosure argument, neither of which warrant a stay.

### A.     Defendants' routine pleading objections do not warrant a stay.

A stay of discovery is warranted only where a defendant's challenges to the complaint are "rock solid or incontrovertible," *O'Conner v. Eden Mgmt. LLC*, No. 13-cv-7391, 2014 WL

4

5761138, at *2 (N.D. Ill. Nov. 4, 2014), or they reveal the claims to be "utterly frivolous or without merit," *New England Carpenters Health & Welfare Fund*, 2013 WL 690613, at *2. Defendants' motions fail to satisfy this threshold requirement. Instead, they raise routine attacks on the pleading under Rules 9(b) and 12(b)(6). They do not demonstrate that the complaint is frivolous, meritless, or "so 'glaringly deficient' or 'completely wanting' that stay of discovery must be imposed." *United States ex rel. Robinson*, 2015 WL 3961221, at *3.

As Relator will more fully explain in her response to the seven motions to dismiss, the SAC details the Defendants' knowing scheme to defraud Medicare by arbitrarily and wrongly denying care to Medicare beneficiaries. Relator lays out the relevant regulatory scheme and fundamental false certifications of compliance with the basic benefit rule. SAC ¶¶ 27-44. Relator explains the numerous methods of fraud and specific communications that evidence this intentional scheme to violate the law, with citation to specific individuals by name, conversations, and statements based on her personal knowledge and records. *See, e.g.* SAC ¶¶ 62, 74, 75, 77, 91, 108-110, 113, 115, 126, 129, 133, 141, 146. Each Defendant's role in the fraud is explained: AIM denied the claims on behalf of the Insurance Plan Defendants, who knowingly hired AIM to deny claims and then lied to the government about the scope of Medicare coverage provided to get paid, and Anthem permitted, condoned, and profited from AIM's fraudulent conduct while directing its insurance plans to use AIM services. *E.g.* SAC ¶¶ 4, 6, 8-10, 132-34, 136, 141-142.

In the SAC, Relator pleads based on her insider knowledge, with a depth of detail and information gained from her position as AIM's Chief Medical Officer. Even a cursory review shows that the SAC cannot fairly be characterized as "utterly frivolous," nor can it easily be cast aside as a mere "fishing expedition" to extract settlement as Defendants suggest. Mot. at 4.

Moreover, the fact that the Defendants move to dismiss the complaint under Rule 9(b) does not support their request to stay discovery. *United States ex rel. Robinson v. Indiana Univ. Health Inc.*, No. 1:13-cv-02009, 2015 WL 3961221, at \*3 (rejecting the argument that Rule 9(b) must be satisfied in FCA cases *before* discovery begins). Likewise, Defendants' contention about the reputational interests behind Rule 9(b), Mot. at 3-4, is a red herring.[1] Discovery does not change the public allegations or impact the reputation of Defendants, nor is there a rule that discovery is stayed in the face of Rule 9(b) motions. *Id*. Defendants' routine pleading challenges under Rule 9(b) and Rule 12(b)(6) does not alter the pursuit of efficient litigation under Rules 1 and 26 or warrant a stay in this case.

B. Defendants' public disclosure argument is not a credible threshold issue.

Defendants also fail to present a credible threshold issue that justifies a stay of discovery. Defendants argue that "whether Relator qualifies as an 'original source' is a (potentially case-dispositive) threshold issue that does not require resolution of Relator's factual allegations and cannot be defeated through discovery." Mot. at 7. This argument fails because it is built on misrepresentations, is facially frivolous,[2] and, to the extent it has any merit, it requires discovery.

First, Defendants' wrongly claim that "the basis for [Dr. Nedza's] pleading is either speculative (as she left employment in 2012) or based only on publicly disclosed information," Mot. at 2, and that "Relator lacks independent knowledge to assert her claims against any Defendant," Mot. at 1. Defendants ignore that Dr. Nedza was the Chief Medical Officer and a member of AIM's executive team for several years with extensive firsthand knowledge of the

---

[1] Most of Defendants' cases on this argument are rulings on motions to dismiss, not motions to stay, and are thus inapplicable here. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770 (7th Cir. 2016) (reversing in part dismissal of FCA claims); *United States ex rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302 (N.D. Ala. 2004); *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002).

[2] Notably, under not one of the twenty-eight defendants in seven motions to dismiss challenged the Court's jurisdiction under Rule 12(b)(1). ECF Nos. 101, 133, 144, 149, 152, 157, 160.

allegations. SAC ¶ 16.[3] Her 169-paragraph complaint includes her personal knowledge about the numerous and various mechanisms of fraud, as well as discussions that reveal the knowing decision to violate Medicare rules by executives at AIM and other Defendants. *See* SAC ¶¶ 9, 59-105, 106-149.  And Defendants must know she worked at AIM for years past 2012, as that is the year she began her employment. SAC ¶ 16.  No fair reading of the complaint can ignore that Dr. Nedza is a whistleblower who revealed substantial new information.

Second, Defendants' public disclosure argument is both narrow and frivolous. Under 31 U.S.C. § 3730(e)(4), Relator's complaint is barred only if: (1) a listed statutorily-enumerated "public disclosure," (2) revealed "substantially the same allegations or transactions" as the complaint, and (3) Relator was not an "original source" as defined by the statute. There is no basis for the application of this provision. Defendants' public disclosure argument is predicated only on CMS audits.[4] These few CMS audits do not reveal "substantially the same allegations or transactions" as the SAC. The "substantially the same" analysis must be done in detail. *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 831 (7th Cir. 2013) (The Seventh Circuit has "indicated on more than one occasion that viewing FCA claims 'at the highest level of generality ... in order to wipe out *qui tam* suits that rest on genuinely new and material information is not sound.'"). Allegations that are "more specific" about the fraud than prior disclosures are not "substantially the same." *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 935–36 (7th Cir. 2012) (holding that allegations of inadequate supervision for surgeries by residents were distinct, and not substantially the same, as unsupervised surgeries by residents).

---

[3] She is also a classic whistleblower who worked tirelessly to stop the fraud, and in the face of continued resistance, voluntarily resigned. Any insinuation that she is a disgruntled ex-employee—Mot. at 4—is false.

[4] MTD ECF No. 102 at 14; MTD ECF No. 145 at 25 (citing SAC ¶¶ 73, 107, 119, 120, 136, 137); MTD ECF No. 136 at 13 (same); MTD ECF No. 153 at 14 (same).

As the SAC states, those audits merely found a) that some Defendants on some occasions failed to make multiple contacts with medical providers, and b) some instances of patients wrongly denied Medicare coverage. SAC ¶¶ 73, 107, 119, 120, 136, 137. These reports of violations of Medicare rules are a far cry from disclosure of the massive, premeditated fraud revealed in the SAC. Nothing in the SAC establishes that the audits revealed "substantially the same" conduct in the type and various mechanisms of fraud or scope and intentionality of the scheme. There is no suggestion that the audits were the basis of the SAC or exposed anything close to the detailed systemic fraud covered by the SAC.[5] *Cf. United States ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256-SAC-TJJ, 2017 WL 2905406, at *9 (D. Kan. July 7, 2017) (denying summary judgment even where CMS had audited and approved the disputed practices). Because Defendants' argument falls flat on the second prong, the Court will not reach whether Relator is an "original source" (though doubtlessly Dr. Nedza "materially adds" to prior audits).

<u>Third</u>, to the extent there is any debate about public disclosure (let alone original source), discovery would be required at least regarding the audit documents and Dr. Nedza's knowledge.

This is not a parasitic lawsuit; Dr. Nedza does much more that "add a few allegations" and "re-package" prior reports. *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 832-33 (7th Cir. 2013). Defendants' public disclosure argument is a baseless attempt to concoct a threshold issue to justify a stay. It should be rejected.

## IV. Defendants' case examples do not justify a stay in this case.

Defendants' examples of FCA cases in which discovery was stayed do not support, let alone require, a stay of discovery here. "[W]hether a stay should be granted is determined by the

---

[5] As just one example, Relator reveals the practice of case aging, whereby Defendants would arbitrarily deny coverage for medical care based on a medical provider's failure to call AIM within one business day.

facts of a particular case." *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 13-1054, 2014 WL 1797674, at *1 (C.D. Ill. May 6, 2014).  The FCA cases cited by Defendants in which a court stayed discovery, Mot. at 5, involve either an unopposed stay request, or a substantial challenge to jurisdiction or venue. *United States ex rel. Sloan v. Waukegan Steel, LLC*, No. 15-cv-458 (N.D. Ill.), ECF No. 26 (granting a stay requested in an initial status report, ECF No. 25, with no briefing or recorded opposition); *United States ex rel. Liotine v. CDW-Gov't, Inc.*, No. CIV. 05-033, 2009 WL 720958 (S.D. Ill. Mar. 18, 2009) (granting a stay pending a motion to dismiss that attacked the court's jurisdiction);[6] *United States ex rel. Proctor v. Safeway, Inc.*, No. 11-cv-3406, 2016 WL 3906571, at * 2 (C.D. Ill. July 14, 2016) (granting a stay for a motion to dismiss that raised a "significant" venue challenge and following *Liotine*). Defendants' other FCA cases do not address motions to stay or analyze the stay issue at all.[7]

Except in rare circumstances, discovery in FCA cases is not stayed during the pendency of a motion to dismiss, including Rule 9(b) motions. *United States ex rel. Robinson*, 2015 WL 3961221 (denying stay for Rule 9(b) motion); *United States ex rel. Garbe v. Kmart Corporation*, No. 12-881, ECF No. 86 (S.D. Ill. Oct. 4, 2012) (same); *Goldberg v. Rush Univ. Med. Ctr.*, Case No. 04-cv-4584, ECF No. 65 (N.D. Ill. July 20, 2010) (Castillo, C.J.) (denying motion for stay despite a motion to dismiss challenging both jurisdiction and Rule 9(b) particularity).

As demonstrated by the various decisions cited by both sides, the determination on a motion to stay is case-specific and should only be granted in limited circumstances, none of

---

[6] The court in *Liotine* commented that Rule 9(b) might influence a motion to stay, but that discussion is not persuasive.  In doing so, it relied on cases discussing Rule 9(b) in the context of motions to dismiss, not motions to stay. No Seventh Circuit case holds that Rule 9(b) modifies the analysis in the context of a motion to stay.

[7] *See United States ex rel. Roop v. Hypoguard USA, Inc*., 559 F.3d 818, 822 (8th Cir. 2009) (affirming dismissal of a complaint with no discussion of a motion to stay); *United States ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-CV-0680S, 2007 WL 4557773, at *2, 8 (S.D. Ind. Dec. 20, 2007) (dismissing a complaint and reporting that discovery had been stayed without analysis or explanation); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1051 (S.D. Ga. 1990) (same).

which is present here.

**V.    The discovery sought by Relator is reasonable and should not be stayed in totality.**

The guiding principle for decisions pursuant to Rule 26 is to promote the efficient final resolution of litigation, not further delay. Fed. R. Civ. P. 1. In an effort to reach a resolution regarding the appropriate scope of discovery, Relator circulated draft requests for production, which were tailored to further that goal.  Rather than raise any specific objection, however, Defendants simply filed this Motion.

A. <u>Relator's initial proposal for document production is reasonably limited.</u>

Relator's initial discovery is tailored to the key issues in this matter. For example, Relator's proposed document Requests 1 and 2 ask for the contracts between AIM and the Insurance Plan Defendants, and between the plans and CMS. ECF No. 170-1 at 6. Request 8 asks for basic claims data, which, as sophisticated insurance companies, Defendants should have readily accessible. Defendants' response may be as simple as printing out a computer report; Defendants have not said otherwise.

Similarly, Relator limits a third of the document requests to just one or two Defendants. ECF No. 170-1 at 6-7. For example, Request 12 asks for AIM's existing denial data (which AIM already creates every week, SAC ¶ 62) and Request 13 seeks a copy of the records AIM prepares to apply its denial rules (the "AIM Guidelines") as computer algorithms.

Any genuine concern that the discovery requests are burdensome, once raised, should be resolved through good faith negotiation or limitation by the magistrate, rather than a total stay.

B. <u>Defendants attempt to fault Relator for seeking information relevant to her claims.</u>

Relator's focused requests for basic, non-proprietary and easily-gathered information does not signal fatal flaws in her SAC or that she is engaged in a "fishing expedition." As noted above, Relator presents extensive and detailed allegations sufficient to meet Rules 8, 9(b), and

10

12(b)(6). The Seventh Circuit recognizes that relators need not have *perfect* knowledge or the all the documents to prove her case at the outset. *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 818 (N.D. Ill. 2013) (Castillo, C.J.) ("Rule 9(b) does not act as a rigid bar to filing a charge of fraud for individuals with less than perfect knowledge."). No relator knows everything, and due to their positions, many whistleblowers (especially former employees) do not have key documents in their possession. *See also United States ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 854 (7th Cir.2009); *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 777 (7th Cir. 2016) ("plaintiff does not need to present, or even include allegations about, a specific document or bill that the defendants submitted to the Government").

Moreover, "allowing the parties to engage in the usual course of discovery" does not authorize fishing expeditions. *United States ex rel. Robinson v. Indiana Univ. Health Inc.*, No. 1:13-cv-02009, 2015 WL 3961221, at *3 (S.D. Ind. June 30, 2015) (rejecting the "fishing expedition" argument in an FCA case even where relator allegedly had not pled "*any* details of *even one* particular claim for payment").

Defendants ignore Seventh Circuit law about the limits of a relator's access to information and wrongly assert that the proposed discovery is "information [Relator] should have known." Mot. at 10. For example, Defendants object that Relator does not "plead the submission of any alleged false claim" to CMS. Mot. at 8. As explained, Relator worked as the Chief Medical Officer for AIM, who was a contractor of Insurance Plan Defendants, who in turn submitted the claims to CMS. It is not surprising, nor fatal, that she does not provide copies of specific claims, so long as she raises a fair inference that such claims were submitted. *United States ex rel. Lusby*, 570 F.3d at 853–54; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 442 (7th Cir. 2011) (fraud can be pled based on "information and

11

belief" where there is a basis for the suspicions).

That inference is amply satisfied here where the Insurance Plan Defendants—by operating Medicare Advantage plans—*necessarily* submit a claim to CMS *every month*. SAC, ¶ 30. Defendants do not—and cannot—assert that no claims were submitted to CMS. Similarly, because the Insurance Plan Defendants offer Medicare Advantage plans, they necessarily each have a Medicare Advantage contract with CMS. (Such contracts are not published, nor available to Relator as an employee of AIM.).

Thus, while Defendants criticize Relator for requesting "the very contracts she claims contain false certifications," Mot. at 8, that request is perhaps the most obvious one (and virtually burden less). To credit Defendants' argument, or consider such a pleading omission fatal, would raise form over substance in the very way that the Seventh Circuit has rejected. *Pirelli,* 631 F.3d at 442 (rejecting the application of Rule 9(b) with "an overly rigid view" of the pleading standards as the federal rules reject "form for form's sake," and because much information is beyond the plaintiff's control).[8]

It is not surprising that Relator seeks relevant information, especially because she has tailored the initial request for production to the basic issues. For Defendants to refuse to produce these basic documents is merely a delaying tactic. *Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) (denying a "motion for a stay purely as a vehicle to stall or delay the inevitable search for the truth").

---

[8] Nor are Defendants correct that Relator will use discovery to plead "facts she will undoubtedly claim were in her knowledge all along." Mot. at 2. It is more than inappropriate for the Defendants to assert that Dr. Nedza would make a misrepresentation to the Court. Further, Defendants are wrong to state that Relator "cannot properly pursue a FCA case based on information that was not her own, original information." *Id.* Substantially every FCA complaint drafted with the assistance of pre-filing investigation by government or private counsel includes information beyond the Relator's pre-existing knowledge.

C. Defendants have not claimed any specific burden, let alone a burden that cannot be resolved by good faith negotiation or discovery limits rather than a total stay.

In addition, Defendants' failure to make a specific burden objection is alone sufficient to deny the stay. "A party resisting discovery on the basis of undue burden must show with specificity that the discovery requests are issue are objectionable." *United States ex rel. Robinson*, 2015 WL 3961221, at \*5 (denying stay in an FCA case where defendants "offer no estimate regarding how much time or how much money will be expended, and they offer no analysis of why such amounts—if quantified—would be disproportionate to the extent of the alleged misconduct in this case" and offered no evidence of such burden: "speculation from Defendants' counsel—without any sort of substantiation—does not establish good cause for staying discovery"); *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-2450, 2014 WL 12746902, at \*1 (N.D. Ill. Feb. 24, 2014) ("In order to establish good cause, 'courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.' 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2035, at 157–58 (3d ed. 2010)."). Further, "regardless of whether the parties themselves would be prejudiced by a stay, the judicial system and society as a whole would be prejudiced" by allowing FCA defendants to avoid discovery of evidence of fraud. *United States ex rel. Robinson*, 2015 WL 3961221, at \*7.

As required by the Federal Rules of Civil Procedure, Relator sought to negotiate reasonable and limited discovery that prioritized basic information and initial disputes. Consistent with her Rule 26 obligations, in a good faith effort to reach an agreement with Defendants on the scope of initial discovery, Relator proposed a short set of requests for production, ECF No. 170-1. Defendants simply refused all discovery, without explanation and without making any specific claim of burden or a counter-proposal. Relator was, and remains,

prepared to discuss and negotiate the scope of discovery and to hear any legitimate concerns about burden.[9] However, to date, no Defendant has formally or informally objected to any particular request or explained any particular burden.

Relator's requests are simple, concrete, and impose no undue burden. Yet Defendants have failed to justify why they should be permitted to conceal such information.

D. A total discovery stay for this 2015 case would harm, not promote, litigation efficiency.

Ultimately, this Court should not further delay the start of discovery in this case. "Although stays on discovery are sometimes appropriate, this court disfavors them because they bring resolution of the dispute to a standstill." *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12-cv-1662, 2013 WL 690613, at *2 (N.D. Ill. Feb. 20, 2013); *United States ex rel. Robinson*, 2015 WL 3961221, at *6 (declining a stay in an FCA case still "in its infancy" where little litigation had proceeded in eighteen months).

Even as to Defendants who hope to be dismissed, Relator's requests would be necessary third-party discovery. *O'Conner v. Eden Mgmt. LLC*, No. 13-cv-7391, 2014 WL 5761138, at *3 (N.D. Ill. Nov. 4, 2014) (denying a stay where a defendant "would appear to be subject to much of the discovery Plaintiffs have propounded" as third-party discovery, even if dismissed as a party from the case.); *United States ex rel. Chandler v. Hektoen Inst. for Med. Research*, 35 F. Supp. 2d 1078, 1087 (N.D. Ill. 1999) (declining to stay because "the documents plaintiff requests would be subject to subpoena, and as a non-party the County" could not refuse).

A total stay of discovery, as to every Defendant, subject, and document, would simply prolong this litigation that is already nearly three years old. Relator remains willing to negotiate limits to streamline initial discovery or address specific burden objections. *Tamburo v. Dworkin*,

---

[9] Relator has not requested that the parties proceed with oral discovery and is willing to stay oral discovery until the pending motions to dismiss are decided or further order of the court.

No. 04-cv-3317, 2010 WL 4867346, at *3 (N.D. Ill. Nov. 17, 2010) (declining to stay discovery, but coordinating discovery in phases, and ordering the parties "to actively engage in cooperative discussions to facilitate a logical discovery flow."). *See In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, 2017 WL 4322823, at *4 (N.D. Ill. Sept. 28, 2017) (tailoring discovery and ordering production of documents "at the core of Plaintiffs' allegations" without a total stay because to deny production would cause "meaningful discovery or preparatory steps necessary to engage in meaningful discovery [to] be delayed indefinitely" pending a motion to dismiss).

## VI. Conclusion

For these reasons, the Court should not further prolong this case by delaying the start of discovery through a total stay. Defendants' Motion to Stay should be denied, with direction to the parties to engage in discovery tailored to permit initial disclosures and document discovery to begin.

Dated: May 2, 2018

*Respectfully Submitted*:

*Counsel for Relator*

/s/   *Matthew J. Piers*

Steven Cohen, scohen@cohenlawgroup.com
COHEN LAW GROUP
70 West Madison Street, Suite 4000
Chicago IL 60602
312.327.8800

Matthew J. Piers, mpiers@hsplegal.com
Juliet Berger-White, jberger-white@hsplegal.com
Charles Wysong, cwysong@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
312.580.0100

Erika Kelton, ekelton@phillipsandcohen.com
Peter Budetti, pbudetti@phillipsandcohen.com
Samuel Brown, sbrown@phillipsandcohen.com
PHILLIPS & COHEN LLP
2000 Massachusetts Ave. NW
Washington, DC 20036
202.833.4567

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused a copy of this **RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY ALL DISCOVERY** to be served through CM/ECF system to counsel of record on May 2, 2018.

Respectfully submitted,

*/s/   Matthew J. Piers*
One of the Attorneys for
Relator-Plaintiff Dr. Susan Nedza

Matthew J. Piers, mpiers@hsplegal.com
Juliet Berger-White, jberger-white@hsplegal.com
Charles Wysong, cwysong@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
312.580.0100

Steven Cohen, scohen@cohenlawgroup.com
COHEN LAW GROUP
70 West Madison Street, Suite 4000
Chicago IL 60602
312.327.8800

Erika Kelton, ekelton@phillipsandcohen.com
Peter Budetti, pbudetti@phillipsandcohen.com
Samuel Brown, sbrown@phillipsandcohen.com
PHILLIPS & COHEN LLP
2000 Massachusetts Ave. NW
Washington, DC 20036
202.833.4567