UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, ex rel. DR. SUSAN NEDZA, | ) | |
| | ) | Case No. 15-cv-6937 |
| Relator, | ) | |
| | ) | Judge Alonso |
| v. | ) | Magistrate Judge Cox |
| | ) | |
| AMERICAN IMAGING MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ESI AND DOCUMENT PRODUCTION

## PROTOCOL AND ORDER

Pursuant to Fed. R. Civ. P. 26(f), the Parties mutually agree on the ESI protocol described below.

**A.     Duty of Cooperation**

The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

**B.     ESI Liaisons**

To promote transparency, communication, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. The ESI liaison for Plaintiff shall be Charlie Wysong and the ESI liaisons for AIM shall be Rob Lindholm and Patrick McMahon.  All productions of ESI by any Party or non-party shall be sent to the Parties' counsel of record, including the ESI liaisons.

1

**C.      Preservation**

1.      The Parties represent that they have issued litigation hold notices to those custodians reasonably believed to have discoverable information and to persons responsible for maintenance of non-custodial data that may be relevant to the claims and defenses in this litigation. The Parties further represent and agree that their efforts to preserve ESI will be reasonable and proportionate, and that, to the extent new custodians or sources reasonably likely to have relevant data come to light, the Parties will account for these new custodians or sources.

2.      The Parties shall take reasonable and proportional steps to preserve discoverable information in their possession, custody or control and represent that they have suspended certain features of their routine electronic information system operations to prevent the loss of information, if that information is subject to a preservation obligation. The Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

3.      Preservation Not Required. The Parties need not preserve the following categories of electronic information:

(a)    Temporary or other transitory data (data that exists for a brief, temporary period and is not maintained in the ordinary course of business);

(b)    "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(c)    random access memory (RAM) or other ephemeral data;

(d)    on-line access data such as temporary internet files, history, cache, cookies, etc.;

(e)    data in metadata fields that are frequently updated automatically, such as "last-accessed" timestamps; and,

2

(f) data that is substantially duplicative of data that is more accessible elsewhere, such as backup data or data stored on smartphones or tablets that is substantially duplicative.

**D.    Document and Data Sources**

1.    Within twenty-one (21) days from of executing this protocol, each Party shall identify and describe potential non-custodial data sources identified after a reasonable investigation that contain data the Party believes in good faith is relevant to the claims and defenses.

2.    The Parties shall timely supplement such disclosure to the extent potential new custodians, custodial sources, or non-custodial sources are identified.[1]

3.    Where disputes arise concerning custodians or sources of ESI, the Parties shall promptly meet and confer.  If the Parties' disagreement persists after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

**E.    Identification of Responsive ESI**.

1.    Consistent with Section D, the Parties agree that within twenty-one days of entry of this Order, and, subsequently, the producing party will (i) identify a list of data sources and custodians likely to possess responsive information based on a reasonable inquiry and identify which of those it proposes to search, (ii) disclose the date ranges and any other parameters proposed to cull or narrow the ESI collection, and (iii) propose any search terms to be used to cull or narrow the ESI collection as described in subsection (2) below.

---

[1] The Parties agree to meet and confer regarding the contents of mobile devices that may contain unique information that is relevant to the claims and defenses and, if so, how and whether such information should be collected and reviewed for production.

2.      Should the producing Party use search terms as a means to cull or narrow the ESI collection, the producing Party will notify the requesting Party of its intent to use search terms and provide the requesting Party with the following information:

(a) A list of search terms the producing Party intends to use along with hit information,

(b) Confirm that the producing Party has made a reasonable inquiry of client employees to identify applicable nicknames, terms of art, abbreviations, and other language variations of proposed search terms likely to result in identification of responsive information, and,

(c) Software to be used to search and search syntax options.

3.      Upon receipt of the search terms and disclosures noted above, the requesting Party may propose modifications to the search sources and terms within twenty-one days of receiving the preceding disclosures. The requesting Party may then request a meet and confer to discuss a mutually agreeable list of search sources and terms with the producing Party. To the extent a producing Party does not agree to a search term proposed by a requesting Party, the producing Party may suggest alternative search term and will provide a good faith, reasonable explanation for its alternative or its refusal to use the search term proposed by the requesting Party to allow the parties to meet and confer.  For any modification proposed by the requesting Party, the requesting Party will provide a good faith, reasonable explanation for its proposed modification to allow the parties to meet and confer.  Nothing in this protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

4.      For each ESI source that is searched with search terms, after the producing Party in good faith believes productions are complete for that source, the producing Party agrees to conduct a validation check across the portion of the ESI source not hitting on the selected search terms and not produced "Null Set."   The producing Party will select a statistically random sample of

4

documents from the Null Set. The size of the statistically random sample will be calculated by using a confidence level of 95% and a margin of error of 4%.

The producing Party will review and mark responsive or non-responsive the random sample of the Null Set. If responsive documents are found during the Null Set review, the producing Party will produce the responsive, non-privileged documents from the Null Set review, and log responsive documents withheld as privileged. Responsive, non-privileged documents will be produced consistent with Section F regarding maintaining of parent-child relationships to the extent they exist. For the ESI source, the producing Party will disclose the count of documents:

(a) in the Null Set, and,

(b) in the Null Set sample: total, responsive, and not responsive.

For these counts, privileged documents withheld shall be included in the totals, but not produced. Based on the information and any responsive documents identified during the Null Set review, the parties will then meet and confer to determine if any additional terms, or modifications to existing terms are needed to identify unique, substantive, responsive documents.

5. If, at some point, the producing Party seeks to use technology assisted review (TAR) instead of search terms for a particular population of data, the producing Party will notify the requesting Party and propose a protocol for the use of TAR. If not agreed, the Parties will meet and confer on procedures for the use of TAR.

6. Where disagreements arise concerning custodians or sources of ESI or other components of Section E, the Parties shall promptly meet and confer. If after meeting and conferring in good faith, the Parties are unable to reach agreement on any component of this Section E, either Party may notify the Court of the unresolved dispute(s) and seek resolution from the Court.

F.     **Production Format and Processing Specifications**

1.     **Paper Records**

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

(a)  TIFFs.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11-inch page size, except for documents requiring higher resolution or different page size.  Each image file should have a unique file name which shall be the Bates number of the page.

(b)  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized based on Logical Document Determination (or "LDD")).  The Parties will make their best efforts to unitize documents correctly and will commit to addressing situations where there are improperly unitized documents.

(c)  For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post It notes shall be scanned both with and without the Post It, with the image of the page with the Post It preceding the image of the page without the Post It.

(d)  Objective Coding Fields.  At least the following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; (6) source location/custodian; (7) confidential; (8) redacted; and (9) production volume.

(e)  OCR Text Files.  Document-level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated.  The text files will not contain the redacted portions of the documents.  OCR software should be set to the highest quality setting during processing. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

2.     **Electronically Stored Information**

The Parties will produce electronically stored information ("ESI") in TIFF format according to the following specifications:

(a) All TIFF formatted documents will be single page, Group 4 TIFF, at 300 X 300 dpi resolution, and 8½ X 11-inch page size, except for documents requiring different resolution or page size.

(b) An image load file, in standard Opticon format, showing the Bates number of each page and the unitization of the documents, will accompany all document images.

(c) Each imaged version of an electronic document will be created directly from the original electronic document.

(d) Color documents (e.g., color photographs or graphical representations in color) shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set forth above, unless the production in black and white alters or obscures the substance of the document or if ordered by the Court. If color images are required, the files shall be delivered in single page, JPEG format. Documents produced in color must be produced with agreed compression. A Party may request that a reasonable number of documents be produced in a color format upon review of the other Party's production.

(e) Parent-child relationships (the association between an attachment and its cover document or between embedded documents and their parent) shall be preserved.

(f) The following metadata fields, if associated with the electronic document, will be produced. The Parties are under no obligation to manually populate these fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the document. Because different platforms use different nomenclature for these metadata fields, the below offers a common name and description, with the expectation that each Party produce that field or its substantial equivalent.

(g) ESI with hidden content or comments will be produced in a manner that makes any such content visible and searchable.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| All Custodian | Name of custodian(s) or non-custodial data source of email(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |

7

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | x | x |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) | x | |

8

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| DateRcvd | Received date of an email message (mm/dd/yyyy format) | x | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x |
| DateLastModified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) | x | |
| All FilePath | File path storage location of the document or email if the source application allows for the creation of folders. Any email container name should be included in the path. | | x |
| NativeLink | Relative path to any files produced in native format | x | x |
| TextLink | Relative path to any OCR/extracted text files in the production set | x | x |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| Confidentiality Designation | Confidentiality Designation | x | x |
| DocExt | File extension for email or e-doc. | x | x |
| Pages | Number of pages in the produced document (not applicable to native file productions). | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| LastModBy | Last Modified/Saved By information as derived from the properties of the document. | x | x |
| ConversationID | Email ConversationID | x | |
| MsgID | Email MsgID | x | |
| AttachCount | Number of attachments | x | |
| AttachNames | Filenames of attachments | x | |
| Redacted | "Y" if document is redacted | x | x |
| ProdVol | Name of the Production Volume | x | x |
| ProdVolume | Identifies the volume of production | x | x |

3.      **Native Files**

a.      The Parties will produce the following ESI types in in native file format files with TIFF placeholder images:

- Electronic spreadsheets

- Audio/video files

- Animations

For file types of which TIFF placeholder images cannot be reasonably generated, the Parties may produce the file natively. The Parties will produce word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), and image (e.g., jpeg, gif) documents in native format upon reasonable request.

10

b.      Any document produced in native format will be produced according to the following specifications:

(a) A unique document number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file.  An example of this convention would be:

"PREFIX_00000001_Confidential.doc."

(b) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value" or other Hash Value; (iii) the original name of the file; and (iv) the unique document number.

(c) Any file produced in native format need not be imaged.  Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file.

4.      **Other File Types**

The Parties will meet and confer on the production format of less-commonly used file types as needed.

5.      **Alternate Formats**

Notwithstanding the Parties' agreements herein, upon reasonable request made by the receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this Order.

6.      **Searchable Text File**

All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted

11

text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows.

In the case of files with redacted text, OCR'd text of the redacted documents may be provided in lieu of extracted text, with the exception of spreadsheets.

     (a) Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

     (b) In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

7.    **Redacted Files**

Extracted text will ***not*** be provided for electronic documents that have been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. For spreadsheets redacted in native format, extracted text will be provided that omits any redacted information. Such extracted text will be generated by the program applying the redactions and will not be generated by OCR.

8.    **Data Load Files/Cross-Reference Files**

Fielded data should be exchanged via a document-level-database load file in UTF 8 or comma delimited (CSV) format. All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT), or Summation (DII). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

9.   **Filtering**

    (a) De-duplicating Documents. The Parties may de-duplicate globally (i.e., across all custodians) using hash values, provided that all other custodians of the duplicate ESI are listed in the "All Custodian" field and "All File Paths" field. The Parties shall de-duplicate stand-alone documents only against stand-alone documents and shall de-duplicate email documents with families only against email documents with families. De-duplication shall not break apart families. ESI that is not an exact duplicate may not be removed.

    (b) Most Inclusive Email Productions. Email threads are email communications that contain prior or lesser-included email communications which also may exist separately in the Party's electronic files. A most inclusive email thread is one in which, at a minimum: (i) all participants (From, To, CC, BCC) in any email in the thread are reflected in the most inclusive thread (ii) all attachments to any emails in the thread are reflected and captured in the most inclusive email thread, (iii) the full body text of all lesser-included emails in the thread are included in the most inclusive email without alterations such as subsequently added in-line comments. Parties may produce most-inclusive email threads and not separately produce lesser-included emails contained in those same threads. Only email messages included in a produced most-inclusive thread, as herein defined, need not be produced, and any relevant email included in a thread that is not a most-inclusive thread, as defined herein, must be produced. To the extent that an e-mail thread contains privileged communications, such communications can be redacted. If an e-mail thread contains responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged. Upon request, the Parties agree to provide individual emails within an email thread, if they exist, provided that such request is reasonable and not unduly burdensome on the producing party.

    (c) De-NISTing. Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

    (d) Zero-byte Files. The Parties shall filter out stand-alone files identified as zero-bytes in size.

    (e) Date. The Parties may limit processing of ESI to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

    (f) The Parties will meet and confer about any additional production format or processing specifications not otherwise provided herein.

13

10. **Date Fields Time Zone.**

All ESI shall be processed with a single time zone and a date and time setting. The time zone used for metadata in a production shall be Eastern time (EDT).

11. **Exception Files.**

The Parties will use reasonable efforts to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

12. **Encrypted or Password Protected ESI.**

For any ESI that exists in encrypted format or is password protected, the producing Party will provide the other Parties access to those files to the extent reasonably possible.

**H.     Databases, Structured, Aggregated or Application Data.**

To the extent  reasonable, structured data or reports from databases or applications will be produced in export or report form in a .csv file, Excel file, or .txt file (tab delimited, pipe delimited, etc.), or other usable format that is reasonable based on the nature of the data. The Parties will reasonably cooperate in the exchange of information concerning such databases and data sources.

**I.     Production Media.**

The producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the producing Party will provide a

decryption key to the requesting Party in a communication separate from the production itself. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

**J.     Privilege Log**

Each Party shall comply with Fed. R. Civ. P. 26(b)(5) and log documents withheld on the basis of privilege from that production within a reasonable period of time after each production (not to exceed thirty days). Privilege logs for ESI shall include at least the following fields: Custodian, from, To, cc, bcc, Subject, File Name, File Path, Date Created or Sent, Date Last Modified, and Description (sufficient to evaluate the merits of the claim of privilege). Redacted documents need not be logged if the reason for the redaction and any other information that would otherwise appear on a log is apparent on the face of the document; and the bibliographic information (to, from, subject, etc.) is not redacted.  For any such document, a producing party shall provide the reason for a redaction, if not already provided, upon request. The producing Party shall identify which persons appearing in the privilege log are attorneys.

**K.     Lost, Destroyed, or Irretrievable ESI.**

If a Party knows of a specific occurrence or process by which responsive ESI that once existed was lost, destroyed, or is no longer retrievable, the Party shall use reasonable efforts and good faith to explain where and when the responsive ESI was last retrievable and promptly disclose the circumstances surrounding the change, whether that information is available from other sources, and whether any backup or copy of such ESI exists.  Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure and the Protective Order entered in this case.

15

**L.      Limitations and Non-Waiver.**

This protocol provides a general framework for the production of ESI and paper documents on a going forward basis.  The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney-client privilege, work-product doctrine, or other applicable protections and confidentiality designations.

**M.      General Provisions.**

1.      Unless this Court orders otherwise, and consistent with the Federal Rules of Civil Procedure, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI.

2.      Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

3.      Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

4.      Nothing in this protocol shall relieve a Party of its obligation to produce or log documents of which they have actual knowledge and which are subject to discovery under Rule 26, subject to any objections.

**IT IS SO ORDERED.**

Dated:          11/17/2020

_____
U.S. Magistrate Judge Susan E. Cox

16