# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | |
|---|---|
| United States ex rel. Dr. Susan Nedza, | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 15-cv-6937 |
| American Imaging Management, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:            Amerihealth Insurance Company of NJ
               c/o William F. Haggett, Registered Agent

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHED RIDER

| Place: Tex Pasley/Hughes Socol Piers Resnick & Dym, Ltd., 70 W. Madison St., Ste. 4000, Chicago, IL 60602 (312) 604-2752 | Date and Time: 07/16/2021 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     06/24/2021

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR | /s/ Tex Pasley |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff/Relator Dr. Susan Nedza _____, who issues or requests this subpoena, are:
Tex Pasley, Esq., 70 W. Madison St., Ste. 4000, Chicago, IL 60602, tpasley@hsplegal.com, (312) 604-2752

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 15-cv-6937

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States ex rel. Dr. Susan Nedza, | ) | |
| | ) | |
| Plaintiff-Relator, | ) | No.   15-cv-6937 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Susan E. Cox |
| American Imaging Management, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**RIDER A TO RELATOR'S SUBPOENA TO AMERIHEALTH INSURANCE COMPANY OF NEW JERSEY**

**DEFINITIONS AND INSTRUCTIONS**

A.      "You" means Amerihealth Insurance Company of New Jersey.

B.      Unless otherwise specified, these requests cover the time period January 1, 2007 through December 31, 2015.

C.      "Documents" includes "ESI" (electronically stored evidence) and both should be given the broadest meaning and construction permissible under the Federal Rules and those terms refer to all responsive documents or ESI in your possession, custody or control—including within the possession, custody or control of any person or entity acting under your control or on your behalf, such as agents, employees and attorneys—unless privileged or otherwise protected.

D.      "Communications" includes email and other written correspondence such as letter, memorandum, or presentation, no matter how delivered, but excludes text messages and instant messages.

E.      "AIM" means American Imaging Management, Inc., which does business as AIM Specialty Health.

F.      "Anthem" means Anthem, Inc., which was named Wellpoint, Inc. prior to 2014.

G.     "Medicare Advantage," also known as Medicare Part C, means private health insurance coverage offered in accordance with the federally funded Medicare Advantage ("MA") healthcare program. 42 U.S.C. § 1395w-21 *et seq.*

H.     "MA Plan" means a Medicare Advantage Insurance Plan. For example, the Blue Cross Medicare Advantage (HMO) plan is an MA Plan operated by Blue Cross Blue Shield of Illinois.  Unless otherwise specific, "MA Plan" refers only to Part C plans.

I.     "CMS" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services and includes Medicare Administrative Contractors ("MACs").

J.     If any document is withheld on grounds of attorney-client privilege, attorney work product or for any other reason, please produce a privilege log that includes: (a) the date of the document; (b) the type of document; (c) the author and recipient of the document; (c) the general subject matter of the document; and (d) the basis on which the claim of privilege or work product is maintained.

K.     To the extent You object only to a request on scope or burden, please produce any documents not subject to the objection.

L.     The Agreed Confidentiality Order is attached. ECF No 253. Documents that You produce which contain Confidential Information as defined in the Order will be marked and treated as Confidential.

M.     Please produce in accordance with the formatting and specifications of the ESI order sections F, H, I, and J, which is attached. ECF No. 268.

## **PRODUCTION REQUESTS**

1.      Documents sufficient to identify the Plan name, all CMS plan number(s), and enrollment each month for each of Your MA Part C plans.

2.      Documents sufficient to show the benefits offered for each of Your MA Part C plans each year.

3.      The contracts with CMS in effect during the relevant time period related to any of Your MA Part C.

4.      All documents You sent or provided to CMS related to or regarding any Medicare Advantage Part C contract.

5.      Each bid you submitted to CMS related to any of Your MA Part C Plans.

6.      All documents You sent or provided to CMS related to or regarding any Medicare Advantage bid for Your MA Part C plans.

7.      The documents you relied on for any Medicare Advantage bid for Your MA Part C plans including but not limited to bid work papers; utilization assumptions, data or information; and cost assumptions, data or information.

8.      All documents You sent or provided to CMS with or regarding any Medicare Advantage Part C monthly payment, data submission or certification.

9.      All documents and communications with the federal government (including CMS) regarding AIM.

10.     All documents and communications related to any appeal, audit, or corrective action plan related to Medicare Advantage and AIM or any action of AIM.

11.     All documents and communications regarding whether AIM or AIM's services violate or comply with CMS requirements for the Medicare Advantage program.

12.     All return on investment, cost of care, utilization, or other impact analyses, assessments, valuations, evaluations, assumptions or summaries related to the impact of AIM for Your MA plans.

13.     Full claims data (e.g. claims dump) for each of Your MA Plans from January 1, 2006 through December 31, 2015 for the following **outpatient** procedures (a) computed tomography ("CT"), (b) computed tomography angiography ("CTA"), (c) Magnetic Resonance Imaging ("MRI"), (d) Magnetic Resonance Angiography ("MRA"), (d) positron emission tomography ("PET") scans, (e) nuclear medicine, (f) echocardiography, (g) diagnostic sleep studies (home based), (h) diagnostic sleep studies (clinic-based), and (i) positive airway pressure ("PAP") treatment.

*For your convenience, a list of the associated CPT codes are included as Exhibit B. Though the Confidentiality Order provides for the disclosure of Personal Health Information ("PHI"), please contact us to discuss omitting certain claims data fields to possibly reduce unnecessary disclosure of PHI.*

14.    Documents sufficient to identify each pre-authorization vendor, contractor, or program, other than AIM, for diagnostic imaging or sleep studies used by each of Your MA Plans from January 1, 2006 through December 31, 2015.

15.    All documents and communications related to payments to AIM related in whole or part to work for Your MA plans.

16.    For the time period October 1, 2017 to present, all documents regarding this lawsuit including all communications or agreements with CMS, AIM, Anthem, or any other client of AIM regarding this lawsuit or the allegations in the compliant.

17.    All agreements between You and AIM.

# EXHIBIT B

## Request #13: Associated CPT Codes

| | | | | |
|---|---|---|---|---|
| 29827 | 70549 | 72156 | 73720 | 75571 |
| 29881 | 70551 | 72157 | 73721 | 75572 |
| 29888 | 70552 | 72158 | 73722 | 75573 |
| 43239 | 70553 | 72159 | 73723 | 75574 |
| 45378 | 70554 | 72191 | 73725 | 75635 |
| 45380 | 70555 | 72192 | 74150 | 76376 |
| 70336 | 71250 | 72193 | 74160 | 76377 |
| 70450 | 71260 | 72194 | 74170 | 76380 |
| 70460 | 71270 | 72195 | 74174 | 76390 |
| 70470 | 71275 | 72196 | 74175 | 77058 |
| 70480 | 71550 | 72197 | 74176 | 77059 |
| 70481 | 71551 | 72198 | 74177 | 77078 |
| 70482 | 71552 | 73200 | 74178 | 77079 |
| 70486 | 71555 | 73201 | 74181 | 77084 |
| 70487 | 72125 | 73202 | 74182 | 78451 |
| 70488 | 72126 | 73206 | 74183 | 78452 |
| 70490 | 72127 | 73218 | 74185 | 78453 |
| 70491 | 72128 | 73219 | 74261 | 78454 |
| 70492 | 72129 | 73220 | 74262 | 78459 |
| 70496 | 72130 | 73221 | 74263 | 78460 |
| 70498 | 72131 | 73222 | 75552 | 78461 |
| 70540 | 72132 | 73223 | 75554 | 78464 |
| 70542 | 72133 | 73225 | 75557 | 78465 |
| 70543 | 72141 | 73700 | 75559 | 78466 |
| 70544 | 72142 | 73701 | 75561 | 78468 |
| 70545 | 72146 | 73702 | 75562 | 78469 |
| 70546 | 72147 | 73706 | 75563 | 78472 |
| 70547 | 72148 | 73718 | 75564 | 78473 |
| 70548 | 72149 | 73719 | 75565 | 78478 |

## Request #13: Associated CPT Codes

| | | |
|---|---|---|
| 78480 | 93350 | A7036 |
| 78481 | 93351 | A7037 |
| 78483 | 93352 | A7038 |
| 78491 | 95800 | A7039 |
| 78492 | 95801 | A7046 |
| 78494 | 95805 | E0470 |
| 78496 | 95806 | E0471 |
| 78608 | 95807 | E0485 |
| 78609 | 95808 | E0486 |
| 78811 | 95810 | E0562 |
| 78812 | 95811 | E0601 |
| 78813 | 0066T | E1399 |
| 78814 | 0067T | G0297 |
| 78815 | 0144T | G0398 |
| 78816 | 0145T | G0399 |
| 93303 | 0146T | G0400 |
| 93304 | 0147T | S8032 |
| 93306 | 0148T | |
| 93307 | 0149T | |
| 93308 | 0150T | |
| 93312 | 0151T | |
| 93313 | A4604 | |
| 93314 | A7027 | |
| 93315 | A7030 | |
| 93316 | A7031 | |
| 93317 | A7032 | |
| 93320 | A7033 | |
| 93321 | A7034 | |
| 93325 | A7035 | |

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. DR. SUSAN NEDZA, | ) ) ) | |
| Plaintiff-Relator, | ) ) | |
| v. | ) ) ) | Case No. 15 C 6937<br>Judge Jorge L. Alonso<br>Magistrate Judge Susan Cox |
| AMERICAN IMAGING MANAGEMENT, INC., et al. | ) ) ) | |
| Defendants. | ) | |

## QUALIFIED PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and 45 C.F.R. § 164.512(e)(1), the Court finds good cause for the issuance of a qualified protective order and ORDERS as follows:

1. The parties and their attorneys are hereby authorized to receive, subpoena and transmit "Protected Health Information" to the extent and subject to the conditions outlined herein.

2. Confidential Health Information. The Parties desire to ensure the privacy of patient/insured/member medical records, patient/insured/member claims information, and other information that the Parties have determined might contain sensitive personal health information ("Confidential Health Information"). Confidential Health Information is intended to encompass any patient health information protected by any state or federal law, including, but not limited to, "Protected Health Information," as defined below, and agree that any Confidential Health Information shall be deemed "Confidential." Confidential Health Information does not include any document or information in which the producing Party has redacted personal identifiers and does not have actual knowledge that the information could be used alone or in combination with other

information to identify an individual who is the subject of the information. A Producing Party may, but is not required to, perform such redactions before producing documents that originally contained "Confidential Health Information" so long as the redactions do not result in prejudice to another Party.

(a)    Protected Health Information. Protected Health Information, as used herein, has the same scope and definition as set forth in 45 C.F.R. §160.103. Without limiting the generality of the foregoing, Protected Health Information includes, but is not limited to, health information, including demographic information, relating to: the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual, which identifies or reasonably could be expected to identify the individual. It also includes, but is not limited to, medical bills, claims forms, charges sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanation of benefits, checks, notices, and requests, and includes all notes, summaries, compilations, extracts, abstracts or oral communications that are based on or derived from Protected Health Information, regardless of form or format in which the individual who is the subject of the information can be identified.

(b)    Safeguards for Confidential Health Information. The Parties also seek to ensure that any person who receives and stores Confidential Health Information in connection with this Proceeding will develop, implement, maintain, and use appropriate administrative, technical, and physical safeguards to preserve the privacy, integrity, and confidentiality of any Confidential Health Information, and to prevent unpermitted use or disclosure of any Confidential Health Information they may receive from any person in connection with this Proceeding. Confidential

Health Information will be securely destroyed, deleted, or returned pursuant to the provisions of paragraph 6 below.

3.      All "covered entities" (as defined by 45 C.F.R. § 160.13) are hereby authorized to disclose Protected Health Information to attorneys representing either party in the above-captioned litigation.

4.      The parties and their attorneys shall be permitted to use or disclose the Protected Health Information for purposes of prosecuting or defending this action including any appeals of this case only after signing Attachment A. This includes, but is not necessarily limited to, disclosure to their attorneys, experts, consultants, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process.

5.      Prior to disclosing Protected Health Information to persons involved in this litigation, counsel shall inform each such person that the Protected Health Information may not be used or disclosed for any purpose other than this litigation. Counsel shall take all other reasonable steps to ensure that persons receiving Protected Health Information do not use or disclose such information for any purpose other than this litigation.

6.      Within 90 days after the conclusion of the litigation including appeals, the parties, their attorneys, and any person or entity in possession of Protected Health Information received from counsel pursuant to paragraph four of this Order, shall return Protected Health Information to the covered entity or destroy any and all copies of Protected Health Information, *except* that counsel are not required to secure the return or destruction of Protected Health Information submitted to the court.

7.     This Order does not control or limit the use of Protected Health Information that comes into the possession of the parties or their attorneys from a source other than a "covered entity," as that term is defined in 45 C.F.R. § 160.103.

8.     Nothing in this Order authorizes counsel for either party to obtain medical records or information through means other than formal discovery requests, subpoenas, depositions, pursuant to a patient authorization, or other lawful process.

9.     This Order does not authorize either party to seal court filings or court proceedings. The Court will make a good cause determination for filing under seal if and when the parties seek to file Protected Health Information under seal.

**Dated**: 6/24/2020                                     **ENTER**:

                                                          _____
                                                          **Susan E. Cox**
                                                          **United States Magistrate Judge**

## ATTACHMENT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States, ex rel. Dr. Susan Nedza, | ) | |
| | ) | |
| Plaintiff-Relator, | ) | No.    15-cv-6937 |
| v. | ) | |
| American Imaging Management, Inc. | ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Susan Cox |
| Defendant. | ) | |

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Qualified Protective Order dated _____ in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Qualified Protective Order and understands that the terms of the Qualified Protective Order obligate him/her to use materials designated as Protected Health Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Protected Health Information to any other person, firm or concern.

The undersigned acknowledges that violation of the Qualified Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

_____

Date: _____     _____

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, ex rel. DR. SUSAN NEDZA, | ) | |
| | ) | Case No. 15-cv-6937 |
| Relator, | ) | |
| | ) | Judge Alonso |
| v. | ) | Magistrate Judge Cox |
| | ) | |
| AMERICAN IMAGING MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ESI AND DOCUMENT PRODUCTION

## PROTOCOL AND ORDER

Pursuant to Fed. R. Civ. P. 26(f), the Parties mutually agree on the ESI protocol described below.

## A.  Duty of Cooperation

The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

## B.  ESI Liaisons

To promote transparency, communication, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. The ESI liaison for Plaintiff shall be Charlie Wysong and the ESI liaisons for AIM shall be Rob Lindholm and Patrick McMahon.  All productions of ESI by any Party or non-party shall be sent to the Parties' counsel of record, including the ESI liaisons.

1

**C.**     **Preservation**

1.     The Parties represent that they have issued litigation hold notices to those custodians reasonably believed to have discoverable information and to persons responsible for maintenance of non-custodial data that may be relevant to the claims and defenses in this litigation. The Parties further represent and agree that their efforts to preserve ESI will be reasonable and proportionate, and that, to the extent new custodians or sources reasonably likely to have relevant data come to light, the Parties will account for these new custodians or sources.

2.     The Parties shall take reasonable and proportional steps to preserve discoverable information in their possession, custody or control and represent that they have suspended certain features of their routine electronic information system operations to prevent the loss of information, if that information is subject to a preservation obligation. The Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

3.     Preservation Not Required. The Parties need not preserve the following categories of electronic information:

(a) Temporary or other transitory data (data that exists for a brief, temporary period and is not maintained in the ordinary course of business);

(b) "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(c) random access memory (RAM) or other ephemeral data;

(d) on-line access data such as temporary internet files, history, cache, cookies, etc.;

(e) data in metadata fields that are frequently updated automatically, such as "last-accessed" timestamps; and,

      (f) data that is substantially duplicative of data that is more accessible elsewhere, such as backup data or data stored on smartphones or tablets that is substantially duplicative.

**D.     Document and Data Sources**

     1.     Within twenty-one (21) days from of executing this protocol, each Party shall identify and describe potential non-custodial data sources identified after a reasonable investigation that contain data the Party believes in good faith is relevant to the claims and defenses.

     2.     The Parties shall timely supplement such disclosure to the extent potential new custodians, custodial sources, or non-custodial sources are identified.[1]

     3.     Where disputes arise concerning custodians or sources of ESI, the Parties shall promptly meet and confer. If the Parties' disagreement persists after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

**E.     Identification of Responsive ESI**.

     1.     Consistent with Section D, the Parties agree that within twenty-one days of entry of this Order, and, subsequently, the producing party will (i) identify a list of data sources and custodians likely to possess responsive information based on a reasonable inquiry and identify which of those it proposes to search, (ii) disclose the date ranges and any other parameters proposed to cull or narrow the ESI collection, and (iii) propose any search terms to be used to cull or narrow the ESI collection as described in subsection (2) below.

---

[1] The Parties agree to meet and confer regarding the contents of mobile devices that may contain unique information that is relevant to the claims and defenses and, if so, how and whether such information should be collected and reviewed for production.

2.      Should the producing Party use search terms as a means to cull or narrow the ESI collection, the producing Party will notify the requesting Party of its intent to use search terms and provide the requesting Party with the following information:

(a) A list of search terms the producing Party intends to use along with hit information,

(b) Confirm that the producing Party has made a reasonable inquiry of client employees to identify applicable nicknames, terms of art, abbreviations, and other language variations of proposed search terms likely to result in identification of responsive information, and,

(c) Software to be used to search and search syntax options.

3.      Upon receipt of the search terms and disclosures noted above, the requesting Party may propose modifications to the search sources and terms within twenty-one days of receiving the preceding disclosures. The requesting Party may then request a meet and confer to discuss a mutually agreeable list of search sources and terms with the producing Party. To the extent a producing Party does not agree to a search term proposed by a requesting Party, the producing Party may suggest alternative search term and will provide a good faith, reasonable explanation for its alternative or its refusal to use the search term proposed by the requesting Party to allow the parties to meet and confer.  For any modification proposed by the requesting Party, the requesting Party will provide a good faith, reasonable explanation for its proposed modification to allow the parties to meet and confer.  Nothing in this protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

4.      For each ESI source that is searched with search terms, after the producing Party in good faith believes productions are complete for that source, the producing Party agrees to conduct a validation check across the portion of the ESI source not hitting on the selected search terms and not produced "Null Set."   The producing Party will select a statistically random sample of

4

documents from the Null Set. The size of the statistically random sample will be calculated by using a confidence level of 95% and a margin of error of 4%.

The producing Party will review and mark responsive or non-responsive the random sample of the Null Set. If responsive documents are found during the Null Set review, the producing Party will produce the responsive, non-privileged documents from the Null Set review, and log responsive documents withheld as privileged. Responsive, non-privileged documents will be produced consistent with Section F regarding maintaining of parent-child relationships to the extent they exist. For the ESI source, the producing Party will disclose the count of documents:

(a) in the Null Set, and,

(b) in the Null Set sample: total, responsive, and not responsive.

For these counts, privileged documents withheld shall be included in the totals, but not produced. Based on the information and any responsive documents identified during the Null Set review, the parties will then meet and confer to determine if any additional terms, or modifications to existing terms are needed to identify unique, substantive, responsive documents.

5.      If, at some point, the producing Party seeks to use technology assisted review (TAR) instead of search terms for a particular population of data, the producing Party will notify the requesting Party and propose a protocol for the use of TAR.  If not agreed, the Parties will meet and confer on procedures for the use of TAR.

6.      Where disagreements arise concerning custodians or sources of ESI or other components of Section E, the Parties shall promptly meet and confer.  If after meeting and conferring in good faith, the Parties are unable to reach agreement on any component of this Section E, either Party may notify the Court of the unresolved dispute(s) and seek resolution from the Court.

**F.     Production Format and Processing Specifications**

    1.     **Paper Records**

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

> (a)  TIFFs.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11-inch page size, except for documents requiring higher resolution or different page size.  Each image file should have a unique file name which shall be the Bates number of the page.

> (b)  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized based on Logical Document Determination (or "LDD")).  The Parties will make their best efforts to unitize documents correctly and will commit to addressing situations where there are improperly unitized documents.

> (c)  For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages with Post It notes shall be scanned both with and without the Post It, with the image of the page with the Post It preceding the image of the page without the Post It.

> (d)  Objective Coding Fields.  At least the following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; (6) source location/custodian; (7) confidential; (8) redacted; and (9) production volume.

> (e)  OCR Text Files.  Document-level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated.  The text files will not contain the redacted portions of the documents.  OCR software should be set to the highest quality setting during processing. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

    2.     **Electronically Stored Information**

The Parties will produce electronically stored information ("ESI") in TIFF format according to the following specifications:

(a) All TIFF formatted documents will be single page, Group 4 TIFF, at 300 X 300 dpi resolution, and 8½ X 11-inch page size, except for documents requiring different resolution or page size.

(b) An image load file, in standard Opticon format, showing the Bates number of each page and the unitization of the documents, will accompany all document images.

(c) Each imaged version of an electronic document will be created directly from the original electronic document.

(d) Color documents (e.g., color photographs or graphical representations in color) shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set forth above, unless the production in black and white alters or obscures the substance of the document or if ordered by the Court. If color images are required, the files shall be delivered in single page, JPEG format. Documents produced in color must be produced with agreed compression. A Party may request that a reasonable number of documents be produced in a color format upon review of the other Party's production.

(e) Parent-child relationships (the association between an attachment and its cover document or between embedded documents and their parent) shall be preserved.

(f) The following metadata fields, if associated with the electronic document, will be produced. The Parties are under no obligation to manually populate these fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the document. Because different platforms use different nomenclature for these metadata fields, the below offers a common name and description, with the expectation that each Party produce that field or its substantial equivalent.

(g) ESI with hidden content or comments will be produced in a manner that makes any such content visible and searchable.

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| All Custodian | Name of custodian(s) or non-custodial data source of email(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| BegBates | Beginning Bates# (including Prefix) | x | x |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| EndBates | Ending Bates# (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | x | x |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | x | x |
| From | From field extracted from an email message | x | |
| Author | Author field extracted from the metadata of a non-email document | | x |
| To | To or Recipient extracted from an email message | x | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | |
| EmailSubject | Subject line extracted from an email message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |
| Title | Title field extracted from the metadata of a non-email document | | x |
| DateSent | Sent date of an email message (mm/dd/yyyy format) | x | |

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| DateRcvd | Received date of an email message (mm/dd/yyyy format) | x | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x |
| DateLastModified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) | x | |
| All FilePath | File path storage location of the document or email if the source application allows for the creation of folders. Any email container name should be included in the path. | | x |
| NativeLink | Relative path to any files produced in native format | x | x |
| TextLink | Relative path to any OCR/extracted text files in the production set | x | x |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| Confidentiality Designation | Confidentiality Designation | x | x |
| DocExt | File extension for email or e-doc. | x | x |
| Pages | Number of pages in the produced document (not applicable to native file productions). | x | x |

9

| Field Name | Field Description | Required for Email | Required for Non-E-mail ESI |
|---|---|---|---|
| LastModBy | Last Modified/Saved By information as derived from the properties of the document. | x | x |
| ConversationID | Email ConversationID | x | |
| MsgID | Email MsgID | x | |
| AttachCount | Number of attachments | x | |
| AttachNames | Filenames of attachments | x | |
| Redacted | "Y" if document is redacted | x | x |
| ProdVol | Name of the Production Volume | x | x |
| ProdVolume | Identifies the volume of production | x | x |

3.    **Native Files**

a.    The Parties will produce the following ESI types in in native file format files with TIFF placeholder images:

- Electronic spreadsheets

- Audio/video files

- Animations

For file types of which TIFF placeholder images cannot be reasonably generated, the Parties may produce the file natively. The Parties will produce word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), and image (e.g., jpeg, gif) documents in native format upon reasonable request.

10

b. Any document produced in native format will be produced according to the following specifications:

(a) A unique document number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be:

"PREFIX_00000001_Confidential.doc."

(b) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value" or other Hash Value; (iii) the original name of the file; and (iv) the unique document number.

(c) Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file.

4. **Other File Types**

The Parties will meet and confer on the production format of less-commonly used file types as needed.

5. **Alternate Formats**

Notwithstanding the Parties' agreements herein, upon reasonable request made by the receiving Party, the Parties shall confer regarding the production in an alternate format of a document previously produced in accordance with this Order.

6. **Searchable Text File**

All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted

text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows.

In the case of files with redacted text, OCR'd text of the redacted documents may be provided in lieu of extracted text, with the exception of spreadsheets.

 (a) Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

 (b) In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

### 7.   **Redacted Files**

Extracted text will ***not*** be provided for electronic documents that have been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. For spreadsheets redacted in native format, extracted text will be provided that omits any redacted information. Such extracted text will be generated by the program applying the redactions and will not be generated by OCR.

### 8.   **Data Load Files/Cross-Reference Files**

Fielded data should be exchanged via a document-level-database load file in UTF 8 or comma delimited (CSV) format. All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT), or Summation (DII). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

9.  **Filtering**

(a) De-duplicating Documents. The Parties may de-duplicate globally (i.e., across all custodians) using hash values, provided that all other custodians of the duplicate ESI are listed in the "All Custodian" field and "All File Paths" field. The Parties shall de-duplicate stand-alone documents only against stand-alone documents and shall de-duplicate email documents with families only against email documents with families. De-duplication shall not break apart families. ESI that is not an exact duplicate may not be removed.

(b) Most Inclusive Email Productions. Email threads are email communications that contain prior or lesser-included email communications which also may exist separately in the Party's electronic files. A most inclusive email thread is one in which, at a minimum: (i) all participants (From, To, CC, BCC) in any email in the thread are reflected in the most inclusive thread (ii) all attachments to any emails in the thread are reflected and captured in the most inclusive email thread, (iii) the full body text of all lesser-included emails in the thread are included in the most inclusive email without alterations such as subsequently added in-line comments. Parties may produce most-inclusive email threads and not separately produce lesser-included emails contained in those same threads. Only email messages included in a produced most-inclusive thread, as herein defined, need not be produced, and any relevant email included in a thread that is not a most-inclusive thread, as defined herein, must be produced. To the extent that an e-mail thread contains privileged communications, such communications can be redacted. If an e-mail thread contains responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged. Upon request, the Parties agree to provide individual emails within an email thread, if they exist, provided that such request is reasonable and not unduly burdensome on the producing party.

(c) De-NISTing. Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

(d) Zero-byte Files. The Parties shall filter out stand-alone files identified as zero-bytes in size.

(e) Date. The Parties may limit processing of ESI to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

(f) The Parties will meet and confer about any additional production format or processing specifications not otherwise provided herein.

13

10. **Date Fields Time Zone.**

All ESI shall be processed with a single time zone and a date and time setting. The time zone used for metadata in a production shall be Eastern time (EDT).

11. **Exception Files.**

The Parties will use reasonable efforts to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

12. **Encrypted or Password Protected ESI.**

For any ESI that exists in encrypted format or is password protected, the producing Party will provide the other Parties access to those files to the extent reasonably possible.

**H.     Databases, Structured, Aggregated or Application Data.**

To the extent reasonable, structured data or reports from databases or applications will be produced in export or report form in a .csv file, Excel file, or .txt file (tab delimited, pipe delimited, etc.), or other usable format that is reasonable based on the nature of the data. The Parties will reasonably cooperate in the exchange of information concerning such databases and data sources.

**I.     Production Media.**

The producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the producing Party will provide a

14

decryption key to the requesting Party in a communication separate from the production itself. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

**J.      Privilege Log**

Each Party shall comply with Fed. R. Civ. P. 26(b)(5) and log documents withheld on the basis of privilege from that production within a reasonable period of time after each production (not to exceed thirty days). Privilege logs for ESI shall include at least the following fields: Custodian, from, To, cc, bcc, Subject, File Name, File Path, Date Created or Sent, Date Last Modified, and Description (sufficient to evaluate the merits of the claim of privilege). Redacted documents need not be logged if the reason for the redaction and any other information that would otherwise appear on a log is apparent on the face of the document; and the bibliographic information (to, from, subject, etc.) is not redacted.  For any such document, a producing party shall provide the reason for a redaction, if not already provided, upon request. The producing Party shall identify which persons appearing in the privilege log are attorneys.

**K.      Lost, Destroyed, or Irretrievable ESI.**

If a Party knows of a specific occurrence or process by which responsive ESI that once existed was lost, destroyed, or is no longer retrievable, the Party shall use reasonable efforts and good faith to explain where and when the responsive ESI was last retrievable and promptly disclose the circumstances surrounding the change, whether that information is available from other sources, and whether any backup or copy of such ESI exists.  Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure and the Protective Order entered in this case.

**L.     Limitations and Non-Waiver.**

This protocol provides a general framework for the production of ESI and paper documents on a going forward basis.  The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney-client privilege, work-product doctrine, or other applicable protections and confidentiality designations.

**M.     General Provisions.**

1.     Unless this Court orders otherwise, and consistent with the Federal Rules of Civil Procedure, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI.

2.     Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

3.     Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

4.     Nothing in this protocol shall relieve a Party of its obligation to produce or log documents of which they have actual knowledge and which are subject to discovery under Rule 26, subject to any objections.

**IT IS SO ORDERED.**


Dated:          11/17/2020          _____
                                    U.S. Magistrate Judge Susan E. Cox

16